SAYDE K. DASKAIS, ET AL. *v*. CARRIE M. KLINE
[No. 107, October Term, 1946.]

*Decided May 21, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Milton Gerson,* with whom was *William A. Gunter* on the brief, for the appellants.

*Charles Z. Heskett,* with whom was *Clarence Lippel* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

Louis Kline died April 9, 1945, at Cumberland, Allegany County, Maryland. He was a merchant and conducted a store at what is known as 19-21-23 Baltimore Street in that City, which he owned subject to a mortgage of $25,000, at the time of his death. He married twice. Sayde K. Daskais is his daughter by his first marriage. She and her husband are the appellants. His second wife, Carrie M. Kline, appellee, was married before, and has a daughter by the former marriage, a Mrs. Hendricks. Shortly before Mr. Kline's death he sold his store business to his step-daughter, Mrs. Hendricks, and rented to her the store property, and she, from that time on, has conducted the store formerly con-

ducted by her step-father. Mr. Kline left a will in which he named his daughter, Mrs. Daskais, and Mr. William M. Somerville, as executors. Under his will he bequeathed a 60 per cent. interest in this store property to his daughter, Mrs. Daskais, and 40 per cent. therein to his wife, Carrie M. Kline. Mrs. Daskais did not live in Cumberland, but resided in Chicago, Illinois, and did not qualify as executor under her father's will. Letters testamentary thereon were granted to Mr. Somerville.

Mr. William C. Walsh was employed by Mrs. Daskais to represent her in the settlement of the estate. She came to Baltimore and Cumberland to advise with Mr. Walsh. He wrote her on June 4, and on June 5, 1945, after he had been in communication with Mr. Kemper, who was the lawyer representing Mrs. Kline. On June 20, 1945, Mr. Morris H. Daskais, the husband of Sayde K. Daskais, and one of the appellants, wrote Mr. Walsh. Since that time Mr. Daskais represented his wife in the matter and conducted all correspondence with Mr. Walsh in reference thereto.

There were a number of complications in the settlement of this estate. Mrs. Hendricks gave notes to Mr. Kline when she purchased the business, which were held by the executor, to which she claims certain set off. Both she and her mother filed claims against the estate. There was also the matter of what rent Mrs. Hendricks should pay for the store property. The roof and floors of this property were out of repair, which gave rise to a controversy of who should make the repairs. Mr. Walsh represented the executor in the matter of these claims, and he also represented Mrs. Daskais. Mr. Kemper has offices in Baltimore City and he associated with him in the matter Mr. Lippel, an attorney in Cumberland. An extended correspondence was carried on between Mr. Walsh and Mr. Daskais, and Mr. Kemper and Mr. Lippel. These attorneys were attempting to settle the differences between the parties and avoid litigation.

On April 23, 1946, Mr. Dakais wrote a letter to Mr. Walsh, in which he proposed the following settlement:

"a cash settlement of $6,500—to Sayde for her interest in the estate, all benefits and obligations to be assumed by Mrs. Kline and Mrs. Hendricks."

On May 3, 1946, Mr. Walsh wrote to Mr. Lippel: "In accordance with our telephone conversation of yesterday, I am writing as attorney for Mrs. Sayde Daskais to advise that Mrs. Daskais will sell her 60% interest in the Kline Building on Baltimore Street, Cumberland, Maryland, to Mrs. Kline, or her nominee, for the sum of $6,500.00 cash, with the understanding that Mrs. Kline shall then assume all of the obligations owed by the estate of her husband, the late Louis Kline, and will also be entitled to all of the assets of said estate, including the $2,000.00 cash settlement proposed by Mrs. Hendricks as a payment of the balance due by her on the purchase of the Kline Clothing business, and any and all accumulated rents on the Kline Building."

The letter goes on to say:

"So far as I have been able to ascertain them, the claims against and the obligations of the Louis Kline estate total approximately $2,000.00, and the commissions of the Executor, the costs in the Orphans' Court, and attorneys' fees will amount to about a thousand dollars, so that the total amount to be assumed by Mrs. Kline under the above proposal would be approximately $3,000.00, plus the $6,500.00 cash payment to Mrs. Daskais, and in return for this she would secure the entire title to the Kline Building on Baltimore Street.

"While I think the above estimate of $3,000.00 covers all of the obligations of the Kline estate, I am not able to guarantee this, and in authorizing me to offer to sell her interest for $6,500.00 cash, with Mrs. Kline to assume the obligations of the estate, including commissions, costs and attorneys' fees, Mrs. Daskais did not set any amount on such obligations, but provided that Mrs. Kline was to assume them all, and this offer is made on those terms. However, since Mr. Kline has been dead for almost a year, and there have been no unexpected claims filed in the Orphans' Court up to this time, we

could readily make practically certain of the amount of the obligations by checking at the Orphans' Court and stating the account and closing the estate at the time the settlement was made.

"I understand you will give me an answer on this matter by Monday, if possible, and I trust that we may at long last be able to get the matter disposed of."

On May 14, 1496, Mr. Lippel wrote to Mr. Walsh:

"On May 3, 1946, you wrote me that Mrs. Sayde Daskais would sell her 60% interest in the Kline building known as No. 23 Baltimore Street, this City, to Mrs. Carrie Kline for the sum of $6,500.00 in cash, Mrs. Kline to assume all obligations due by the Estate of L. Kline, deceased, and to be entitled to all of the assets of said Estate plus any and all accumulated rents on the building.

"Mrs. Kline hereby accepts the offer contained in your letter and will arrange to pay the purchase price of $6,500.00 in cash within the next 60 days and sooner if possible.

"If you wish, you may prepare an agreement of sale or it is satisfactory to me if you will have Mrs. Daskais and her husband execute a deed and hold it for delivery upon payment of the purchase price within the time noted above."

On May 15, 1946, Mr. Walsh wrote a letter to Mr. Lippel, in which, among other things, he stated: "I also expect to ask the court (Orphans' Court) for a counsel fee of $750.00 and I estimate the court costs will be about $50. Some time ago you told me that Mr. Kemper had suggested objecting to the amount of my fee, and while I feel confident that in view of all the work done and time consumed in this matter the court would allow me the above fee, I do not want to make a settlement of the matter and then have a fight about the fee."

On May 23, 1946, Mr. Kemper wrote a letter to Mr. Lippel, which he directed to be sent to Mr. Walsh, which was done on May 31, 1946. In this letter of May 23rd Mr. Kemper stated to Mr. Walsh: "On May 3, 1946, you

offered to sell Mrs. Daskais's 60% interest in the Kline Building for $6500. cash 'with the understanding that Mrs. Kline shall then assume all of the obligations owed by the estate of her husband,—.' Your offer was accepted unconditionally by Mr. Lippel's letter of May 14, 1946, in accordance with instructions sent by me."

The letter then engaged in discussions about the proposed fee of $750 to Mr. Walsh, to be paid as part of the costs in the Orphans' Court in the settlement of the Kline estate. On May 31, 1946, Mr. Walsh wrote a long letter to Mr. Kemper, in which he stated: "* * * I do not wish to be put in the position of closing this matter, and then being compelled to have a fight and perhaps litigation over my fee, and since Mrs. Daskais understood that my fee would be paid by the estate, and our offer clearly stated this, and since you now state that you will object to the estate paying the fee, I think it proper that the settlement be held up until this matter has been cleared up."

On June 5th Mr. Kemper replied to this letter. On June 10, 1946, Mr. Lippel wrote Mr. Walsh the following letter:

"I have been asked to write you the following:

"Under date of May 3, 1946, you wrote as counsel for Mrs. Sadie Daskais offering to sell her 60% interest in the Baltimore Street property of the late Louis Kline to Mrs. Carrie Kline or her nominee for $6,500.00 cash under the conditions set forth in your letter.

"On May 14, 1946, I wrote you accepting this offer. I am now holding the purchase price of $6,500.00 with instructions to deliver a check for the same upon receipt of a deed conveying a clear title to Mrs. Daskais's interest in the property. The deed is to be made to '23 Baltimore Street Corporation.' I will appreciate it if you will let me have a copy of the deed as soon as it is prepared. I will immediately examine the title and if I find it merchantable, I will probably be ready to close this transaction by the time you have the deed back from Chicago.

"Mr. Kemper has asked me to tell you also that he does not regard the determination of your fee as any hindrance to the closing of this transaction; if the payment of your fee cannot be straightened out, that you have your recourse by filing a petition in Orphans' Court. I am writing you only as instructed."

On July 16, 1946, the Bill of Complaint in this case was filed. After setting out many of the facts narrated, it prayed:

"1. A declaratory judgment that the attorney's fee to be paid by complainant means that complainant shall pay such fees as may be due the attorney to the executor of the Estate of Louis Kline, Deceased, and does not mean such fee as may be due by defendants to their own attorney for services performed by said attorney for said defendants individually.

"2. That the offer of defendants to sell their said sixty (60%) per cent. interest in said Baltimore Street property may be specifically enforced and that said defendants may be required to convey the same unto your complainant; that if said defendants refuse to execute a deed, that a trustee or trustees may be appointed by this Honorable Court to execute the same.

"3. That your complainant may have such other and further relief as the nature of her case may require."

Upon this bill and exhibits, the court passed a *nisi* order. On July 18th appellants demurred to the bill. The first and second reasons for the demurrer in this case are that the bill of complaint is not within Chapter 724 of the Acts of 1945 of the General Assembly of Maryland, which is the Declaratory Judgment Act, and third, the Statute of Frauds is interposed. This demurrer was overruled on July 26, 1946, and on August 13th the appellants filed their answer to the bill, in which they substantially deny its allegations. The case was heard in open court and on October 3, 1946, the court decreed that the appellants shall, within the period of 60 days, execute a deed of their respective interests in the property in question unto Carrie M. Kline, her heirs and assigns,

in fee simple, and deliver the same unto the Clerk of the Court for Allegany County, who shall, after deducting the costs of suit, pay unto appellants the net proceeds from the sum of $6,500, deposited with the Clerk by the plaintiff as payment for the appellants' interest in the property, in compliance with the contract made between the parties hereto. It was further decreed that appellee shall assume the obligations of the estate of Louis Kline, including executor's commissions, the costs of the settlement of said estate and attorney's fees; the respective sums with relation thereto to be determined by the filing of a final account by William M. Somerville, Executor of the estate of Louis M. Kline, and the same shall be paid immediately upon final ratification thereof by the Orphans' Court of Allegany County. It further decreed that if appellants refused to execute the deed to Carrie M. Kline, for the property in question, within the time set forth, that in that event Clarence Lippel shall be "and he is hereby appointed Trustee in this cause with full power and authority to execute said deed for and on behalf of the said Sayde K. Daskais and Morris H. Daskais, her husband, and conveying their entire interest in said property unto the said Carrie M. Kline, her heirs and assigns, free, clear and discharged of all the right, title and interest of the said Sayde K. Daskais and Morris H. Daskais, her husband, or either of them or any person or persons claiming by, through or under them" and that the appellants pay the costs and the Clerk shall deduct the amount thereof from the money deposited with him by the plaintiff.

The cause was thereafter reheard and on November 6, 1946, the court decreed that the decree filed in the proceedings on October 3, 1946, be ratified and confirmed. From the decree of October 3, 1946, and the decree of November 6, 1946, appeals were taken to this Court.

The appellants contend: 1. That there was no binding contract upon them to convey the real estate in question. 2. If there is such a contract, it should not be enforced

because it is inequitable. 3. That there is no case here for appellee to seek adjudication of her obligation as to payment of attorney's fees under the Declaratory Judgment Act.

From the record, it appears that the chancellor treated this case as one for specific performance, and we so regard it. The matter of the allowance of a fee for an attorney for legal work done in the administration of an estate in the Orphans' Court is one that lies within the discretion of that court. It could not affect a case such as this, unless the contract involved specifically provided that it should be paid by the purchaser of the property in question. If it was not so provided it would be foreign to the matter now before the Court. The relief in this case did not depend upon the prayer for a declaratory judgment, and the first prayer of the bill may be treated as unnecessary. It did pray for specific performance of the contract which it set up, and that is the question which is before this Court.

The facts of this case show the following: That in June, 1945, Mr. Walsh was employed by Mrs. Daskais. He communicated with Mr. Kemper, the attorney for Mrs. Kline, and wrote Mrs. Daskais on June 4, and June 5, 1945. From that time on Mr. Daskais handled the matter for his wife, with her consent, with Mr. Walsh. All correspondence with Mr. Walsh was conducted with Mr. Daskais and it shows that he consulted with Mrs. Daskais and they acted together in their directions to Mr. Walsh, who was looking after their interests in the Kline estate. They lived in Chicago and Mr. Walsh was "on the scene." It is conceded by all parties that the attorneys for the respective parties, with their consent and approbation, were trying to settle the matter out of court and without litigation. There was talk of Mrs. Daskais buying out the interest of Mrs. Kline, and Mrs. Kline buying out the interest of Mrs. Daskais. These negotiations were considered by the attorneys and the parties.

After Mr. Kline had been dead a year, on April 23, 1946, Mr. Daskais wrote Mr. Walsh a letter in which he stated: "First; a cash settlement of $6500—to Sayde for her interest in the estate, all benefits and obligations to be assumed by Mrs. Kline and Mrs. Hendricks."

After considering in this letter a number of matters concerning the estate, Daskais wrote:

"I realize that these proposals are not entirely in line with my last conversation with you, but they represent our final conclusions. * * *.

"I expect to be East about the first week in May, although I cannot set any exact date as yet. I shall be available to you for as much time as you want in Cumberland or Baltimore. I shall notify you as to my plans as soon as they can become more definite."

On May 3, 1946, Mr. Walsh, acting for the appellants, wrote Mr. Lippel, acting for Mrs. Kline, the following: "In accordance with our telephone conversation of yesterday, I am writing as attorney for Mrs. Sayde Daskais to advise that Mrs. Daskais will sell her 60% interest in the Kline Building on Baltimore Street, Cumberland, Maryland, to Mrs. Kline, or her nominee, for the sum of $6,500.00 cash, with the understanding that Mrs. Kline shall then assume all of the obligations owed by the estate of her husband, the late Louis Kline, and will also be entitled to all of the assets of said estate, including the $2,000.00 cash settlement proposed by Mrs. Hendricks as a payment of the balance due by her on the purchase of the Kline Clothing business, and any and all accumulated rents on the Kline Building."

Irrespective of what other matters that letter contained, the part quoted was a clear, definite, and certain offer by Mrs. Daskais to sell her interest in the Kline estate to Mrs. Kline.

On May 14, 1946, Mr. Lippel, acting on behalf of Mrs. Kline, wrote Mr. Walsh as follows:

"On May 3, 1946, you wrote me that Mrs. Sayde Daskais would sell her 60% interest in the Kline building known as No. 23 Baltimore Street, this City, to Mrs.

Carrie Kline for the sum of $6,500.00 in cash, Mrs. Kline to assume all obligations due by the Estate of L. Kline, deceased, and to be entitled to all of the assets of said Estate plus any and all accumulated rents on the building.

"Mrs. Kline hereby accepts the offer contained in your letter and will arrange to pay the purchase price of $6,500.00 in cash within the next 60 days and sooner if possible.

"If you wish, you may prepare an agreement of sale or it is satisfactory to me if you will have Mrs. Daskais and her husband execute a deed and hold it for delivery upon payment of the purchase price within the time noted above."

This was a clear and definite acceptance in terms of the offer to sell to Mrs. Kline, contained in Mr. Walsh's letter of May 3, 1946. This offer and acceptance, in writing, complies with the Statute of Frauds, and is binding, if the respective attorneys were authorized to contract to sell and purchase the interests of their respective clients in the property concerned.

A broker or agent has not the power or authority to bind his principal by signing a contract for him, unless he is authorized so to do. If he is so authorized the contract is binding. The case of *Brown v. Hogan,* 138 Md. 257, 113 A. 756, relied upon by both parties, so holds. In that case an attorney signed a contract for the sale of his client's property, but it was held he was without authority to do so. In the Hogan case the Court said, at page 269 of 138 Md., at page 761 of 113 A.: "As is said in the note in Ann. Cas. 1917A, 524: 'While the power of a real estate broker or agent ordinarily extends only to finding a purchaser, it has been held that if the language used by the parties or in the instrument with reference to his employment, regarded in the light of surrounding circumstances, clearly shows that the broker is authorized to contract for the sale of the property, the contract may be enforced against the owner.' See also 1 *Mechen on Agency,* Sec. 798." See *Williston on Contracts,* Vol. 1, Sec. 28.

In *Howard v. Carpenter*, 11 Md. 259, at page 281, it is said: "An attorney, either at law or in fact, has no authority either to make a lease, or to ratify or confirm an imperfect one, or to perfect an inchoate agreement for a lease of property of his principal or client, *unless authority for such purpose is expressly given."* (Italics supplied.)

In *Collins v. Wetzel*, 163 Md. 194, 161 A. 18, real estate was owned by two sisters. One made an offer in writing to the other, through an attorney, which was accepted by the other sister in writing, through an attorney. This case has many of the features of the case now before the Court. Judge Digges, in the opinion for this Court, affirmed a decree for specific performance.

When we consider the proposition which Daskais authorized Mr. Walsh to make on behalf of himself and wife, in his letter of April 23, 1946, in connection with the direct offer which Mr. Walsh made in his letter of May 3, 1946, and consider the facts and circumstances surrounding this case, we conclude that the appellants authorized Mr. Walsh to make the offer contained in his letter of May 3, 1946, and he had authority to sell the interest of the appellants in the property involved in this case. The record shows the following: "It is admitted by counsel for Mr. and Mrs. Daskais that on May 3, 1946, when Judge Walsh wrote the letter offered in evidence, he had full authority to act for Mr. and Mrs. Daskais in making the said offer in the sale of the property."

Neither in the letter of April 23rd to Mr. Walsh by Mr. Daskais, nor in Mr. Walsh's letter of May 3rd to Mr. Lippel, is anything said about a fee that was to be paid by the appellee to Mr. Walsh in connection with the sale of this property. On the contrary, Mr. Kemper had notified Mr. Walsh, writing that his client would object to the payment of a fee to Mr. Walsh for services rendered personally to Mrs. Daskais as distinguished from services rendered to the estate. We see no reason why the contract in this case should not be specifically performed. There is not a word of evidence that it is tainted by un-

fairness, or that the price is inordinately low, that it is not clear, or mutual. All of the standards that we have required in such cases seem to be present, and it should be enforced as a matter of course. See *Smith v. Biddle*, 188 Md. 315, 52 A. 2d 473, and cases cited, and *Moran v. Hammersla*, 188 Md. 375, 52 A. 2d 727.

It is interesting to note that at the argument of the case solicitor for appellants admitted that they had a more attractive offer for this property and that it could be sold for an amount greater than it was sold for to appellee. And solicitor for the appellee stated that they now make no objection to Judge Walsh's fee.

We conclude that the decrees appealed from should be affirmed.

> *Decrees of October 3, 1946, and November 6, 1946, affirmed, appellants to pay costs.*