[Civ. No. 18535.   Second Dist., Div. One.   Jan. 16, 1952.]

FLOYD H. NELLIS, Appellant, v. HARRY A. MASSEY, Respondent.

Harry M. Irwin and Leslie S. Bowden for Appellant.

Abe Richman and Edward K. Brody for Respondent.

WHITE, P. J.—Plaintiff appeals from a judgment that he take nothing by his complaint on an alleged "contract to pay money."

In June, 1948, plaintiff was the holder of a judgment against Kathleen A. Clawson and others in the sum of $8,276.41, which judgment was a lien upon a parcel of real property owned by Mrs. Clawson. This property was sub-

ject to a deed of trust held by defendant, and two deeds of trust held by defendant's sister. The priority as among these various liens at the time the purported contract was assertedly entered into, was as follows:

1. The trust deed held by defendant, securing $24,982.46, which defendant had purchased in order to protect his sister's claims, and which trust deed was in process of foreclosure by trustee's sale;

2. A trust deed held by defendant's sister for $3,000;

3. Plaintiff's judgment for $8,276.41;

4. A trust deed held by defendant's sister for $2,200.

Plaintiff alleged in his complaint that prior to the trustee's sale plaintiff and defendant were informed and believed that the reasonable market value of the real property was in excess of $35,000. That on June 28, 1948, the day before the date set for the trustee's sale, "plaintiff and defendant made and entered into a verbal contract, wherein and whereby the plaintiff promised and agreed that, for and in consideration of the sum of $4,000 which the defendant promised and agreed to pay to the plaintiff as herein alleged, the plaintiff would attend at the time and place of the sale of said real property by said trustee and that the plaintiff would execute thereat, for the use and benefit of the defendant, whatever instrument would be required by said trustee to receipt for and credit as payment upon plaintiff's said judgment the overage which otherwise would be payable to plaintiff on his said judgment, viz.: the excess of the amount at and for which the defendant would purchase said real property at said sale over and above the total indebtedness and obligations secured by said deed of trust, without any actual payment whatever to the plaintiff of any part of said overage; and wherein and whereby, in consideration thereof and of the benefit to the defendant of his being enabled thereby to bid for and purchase said real property at said trustee's sale, against other anticipated bidders thereat, at and for any sum not exceeding $33,168.87, to wit: the amount of the obligations secured by said deed of trust plus the amount then unsatisfied and owing to the plaintiff on his said judgment, at the actual cost to the defendant therefor of only $28,982.46, to wit: the amount of said obligations plus said $4,000, the defendant promised and agreed to pay to the plaintiff the sum of $4,000 within ninety days after the date of the sale of said real property by said trustee under said deed of trust."

It was further alleged that on June 29, 1948, the date for which the sale was noticed, and on July 7, 1948, to which date it was postponed, plaintiff attended at the time and place of sale and notified defendant he was ready, able and willing to perform his obligations under the contract; that on July 7, 1948, the property was sold to the defendant for the sum of $24,982.46, the amount of the trust deed held by him.

The trial court found adversely to plaintiff on the issue of whether an oral contract as alleged was entered into, and further found that "the purported agreement was discussed between plaintiff's counsel and an attorney then representing the defendant, but that the defendant's attorney had no authority from the defendant to make or enter into any agreement regarding the purported use of said judgment." It was also found that the asserted contract was invalid by reason of section 1624 of the Civil Code, "and particularly subdivision 4 thereof, as well as section 1624a of the same code." The court also found that defendant purchased the property at the trustee's sale for the precise balance due on the first trust deed owned by him, "and that by so doing he received no consideration whatsoever from the plaintiff, either by reason of the plaintiff's judgment, or by reason of any act of the plaintiff."

As grounds for reversal, appellant asserts that "respondent authorized Mr. Hammack (his attorney) to make the contract"; that the findings are contrary to and unsupported by the evidence, as to Mr. Hammack's authority, respondent's promise to pay $4,000, as to consideration, and the effect of the statute of frauds (Civ. Code, §§ 1624, 1624a). Further, it is urged, respondent is estopped to rely upon the statute of frauds; that no finding was made on material issues, and that evidence was taken and findings made outside of the issues.

We find, upon a consideration of the evidence adduced at the trial, that it is unnecessary to consider appellant's arguments that the asserted contract was not invalid under the statute of frauds and that it was supported by a valid consideration, for the reason that there is contained in the record substantial evidence to support the court's finding that no contract was entered into.

The negotiations between the parties were conducted by their respective attorneys. The trustee's sale had been noticed for Tuesday, June 29, 1948. Plaintiff's attorney, according

to his testimony, on either Friday or Monday preceding the date of the sale, had a telephone conversation with defendant's attorney, in which they arrived at an agreement; that on Monday he had a second telephone conversation with defendant's attorney, in which he told defendant's attorney "I was confirming our oral agreement, and the understanding that it would be a firm commitment and contract on the part of both parties without being reduced to writing. I said further so that there may not be any misunderstanding, 'I want to restate the agreement in the presence of Mr. Nellis (Plaintiff), with you listening on the phone,' and then I stated in substance my understanding of the agreement, that Mr. Massey (Defendant) had made a firm commitment, that he will pay Mr. Nellis $4000 on or about 90 days after the date of the sale, and that in consideration thereof, Mr. Nellis will attend the sale; he will there execute any and all papers which may be necessary so that Mr. Massey may use Nellis' judgment as a part of the amount which he will bid at the sale, if the bidding goes up high enough so it is necessary to do so, and that if the whole judgment is used, then Nellis will have nothing left; that is used by Mr. Massey in the bidding, but that whatever portion of the judgment has not been used by Mr. Massey in the bidding at the sale will remain the property of Mr. Nellis." That defendant's attorney agreed. On the following day, the parties and their attorneys appeared at the time and place of the sale, and after some consultation, the sale was postponed to July 7. According to the evidence of plaintiff and his attorney, when they appeared at the sale on June 29, they indicated to defendant that plaintiff was ready to perform his agreement and defendant acquiesced by nodding his head or saying, "Very well."

The defendant, however, denied that he so acquiesced at the sale. He further testified that he never authorized his attorney to enter into such an agreement with plaintiff's attorney, and did not understand why plaintiff and his attorney were present at the sale; that he first learned of the purported agreement between the attorneys on Sunday, June 27, and then told his attorney to notify plaintiff's attorney that the agreement was not satisfactory, not "according to the instructions I gave him."

The evidence, with the reasonable inferences to be drawn therefrom, supports a conclusion that defendant's attorney was without actual authority to enter into an agreement bind-

ing upon his client. Under section 283 of the Code of Civil Procedure, an attorney has authority: "1. To bind his client in any of the steps of an action or proceeding by his agreement filed with the clerk, or entered upon the minutes of the court, and not otherwise; 2. To receive money claimed by his client in an action or proceeding during the pendency thereof, or after judgment, unless a revocation of his authority is filed, and upon the payment thereof, and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment." In *Woerner* v. *Woerner*, 171 Cal. 298 [152 P. 919], the court said: "An attorney has no general authority to act for his client. His stipulation for a disposition of his client's property cannot bind the client if the attorney had no legal authority to make it; at least not unless it is acted on by the court and carried into the judgment. . . . Since the attorneys were without written authority to stipulate for the conveyance of land, and the omission of the agreement from the stipulation was not caused by a mutual mistake, it follows that it was of no binding force on the parties with respect to the land."

Commonly, attorneys are employed by principals in all manner of business transactions and negotiations not involving lawsuits, but it is not the rule that in such situations an attorney has, merely by virtue of his employment as such, plenary authority to enter into contracts on behalf of his client. His function in such matters is that of negotiating for and advising his client. So in the present cause, the attorneys during the negotiations repeatedly referred each proposal or counterproposal back to the client for approval. This course of conduct was of evidentiary significance in the trial court's determination of whether an ostensible authority had been conferred upon his attorney by the defendant.

It is urged by appellant that respondent conferred upon his attorney actual authority to enter into a contract and caused and allowed plaintiff's attorney and plaintiff to believe that defendant's attorney possessed such authority; and that defendant ratified the contract "by affirmatively assenting to the appellant's attendance at the trustee's sale for the purpose of signing whatever papers might be required to carry out the contract." These contentions must fail before the settled rule that questions of the value and effect of evidence and testimony, the credibility of witnesses and the inferences to be drawn from the evidence, are matters to be

settled by the trier of fact and not by an appellate court. The testimony of defendant, if believed, indicated that he did not ratify "by affirmatively assenting to the appellant's attendance at the trustee's sale" and that he advised his attorney that he would not go through with the deal. It was for the trier of fact to determine under the evidence whether defendant's conduct amounted to a ratification, whether he had conferred authority upon his attorney to enter into an agreement, and whether he acted promptly in disavowing the agreement if the same was made by his attorney.

Further discussion of the testimony of the parties and their attorneys would serve only to demonstrate that the decision of the cause rested upon the trier of fact in resolving conflicting testimony and in determining the inferences to be drawn from the facts deemed by him to have been legally proved. This was the province of the trial judge, and his conclusion cannot be disturbed on appeal where, as here, substantial evidence or reasonable inference lends support thereto. (See *Nichols* v. *Mitchell,* 32 Cal.2d 598, 606 [197 P.2d 550] ; *Hicks* v. *Reis,* 21 Cal.2d 654, 659, 660 [134 P.2d 788].) The power of this court begin and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the findings, and when two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court (*Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]).

The conclusions at which we have arrived render it unnecessary to consider other contentions raised. The criticisms of the findings made by appellant afford no ground of reversal, since it is apparent that had more detailed findings been made they would have been adverse to appellant.

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied February 11, 1952, and appellant's petition for a hearing by the Supreme Court was denied March 13, 1952.