## SALVATORIAN MISSION HOUSE, INC. *v.* HORN ET AL.

[No. 216, October Term, 1955.]

*Decided July 11, 1956.*

The cause was argued before BRUNE, C. J., and DELA-
PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Joseph G. Dooley* and *Chester M. Huester* for the appellant.

*William B. Evans* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment in the amount of $5,250.00 in favor of the appellee brokers, entered by the Circuit Court for Cecil County, sitting without a jury, in an action to recover commissions on the sale of real estate known as "Beaver Dam Farm" on April 6, 1955. The action was based on an "exclusive agency" agreement dated May 26, 1950, executed by Mrs. Horn, representing the American Realty Co., Inc., and by John W. Schlinkmann, described as "Superior, Holly Hall Mission, Society of the Divine Savior, Inc., Elkton, Md." The chief question presented on this appeal is whether the appellant corporation is bound by the terms of this agreement.

By the terms of the agreement, the "exclusive agent" agreed to perform certain services in connection with "the Mission properties", including assistance in making preliminary surveys and appraisals, advice as to subdivision, contracting engineers and surveyors, architects and builders, help in procuring approval of governmental agencies, and other services in securing mortgages and loans, without additional compensation. The "Mission", in consideration of these undertakings, agreed to employ the appellees "as its exclusive agent for the purpose of selling, renting or exchanging our properties in Cecil County". The authority was to continue for five years, with automatic renewal for five years more unless notice of cancellation should be given one year prior to the expiration of the first term. The amount of commissions was to be "equal to the commission specified in the Standard Schedule of Rates of the Real Estate Board of Baltimore, Maryland, during the term of this contract, or any extension thereof."

It appears that in 1950 the Society of the Divine Savior, Inc., a non-stock Wisconsin corporation, held title to cer-

tain lands in Cecil County just outside the Town of Elkton. The Society is a religious order of the Roman Catholic Church with its international headquarters in Rome and its provincial headquarters in Wisconsin, devoted to international missionary work. The Wisconsin corporation was formed for the management of its temporal affairs some sixty years ago. Another non-stock corporation, under the name of Salvatorian Mission House, Inc., was formed in Maryland on May 5, 1952, and all of the land in Cecil County was transferred to the new corporation, without consideration, on June 4, 1952. Thereafter, the Wisconsin corporation withdrew its qualification to do business in Maryland. For many years prior to 1950 the Society maintained a religious house at Elkton. In 1950, Rev. Father John W. Schlinkmann was the Superior of this Mission House, and also its Procurator. He was generally subject to the direction of the Provincial Superior in Wisconsin, but exercised general supervision over local matters both religious and temporal. He was not an officer or director of the Wisconsin corporation in 1950, but he was one of the incorporators of the Maryland corporation in 1952, and its resident agent. The charter provided that the officers of the corporation should consist of a president, who shall be the Provincial Superior, a vice-president, who shall be the Superior of the Salvatorian Mission House, and a secretary and treasurer, who shall be the Mission Procurator. No organization meeting of the new corporation was held until October, 1955.

In 1950, the land owned by the Wisconsin corporation in Cecil County consisted of some four hundred acres, comprising "Holly Hall", and the Creswell and Biddle properties. The State of Maryland had constructed a dual highway, now known as U. S. Route 40, bisecting the properties, which rendered the property desirable for building sites for both commercial and residential purposes. It was proposed that the property be developed by laying out streets, installing water, sewer and other facilities, preparatory to the sale of lots, in what was known as Holly Hall Terrace. One hundred and twenty-five lots were laid out here, of which seventy-three have been built upon and others have been sold. There

were seventy lots laid out in Elkwood Estates. Valuable road front property was also leased to various business enterprises. All of these transactions were negotiated by Mrs. Horn, as broker. She received commissions in most cases, except that in connection with the sale of certain areas to builders, she either waived or postponed her claim for commissions against the Maryland corporation, in view of the fact that she was designated as exclusive agent of the builders in regard to the sale of houses and the lots on which they were erected to purchasers, and received commissions on such sales. We find no merit in the appellant's contention that such action on her part constituted an abandonment of the exclusive brokerage agreement here relied on.

Beaver Dam Farm, a water front property acquired by the Wisconsin corporation prior to 1952, was never actually laid out in building lots, although Mrs. Horn did conduct certain preliminary operations with this in view. She was negotiating for the sale of the property and had produced several offers that were not acceptable. On April 6, 1955, the tract was sold as acreage to the Roland Park Company, and a commission was paid to a Baltimore broker. It appears that Rev. Father Schlinkmann had been succeeded as Superior of the Mission House at Elkton sometime prior to 1952, although he remained as Procurator until 1954, when Rev. Father Mark Sterbenz assumed both offices. Rev. Father Sterbenz testified that he had no knowledge of the exclusive agency agreement here relied on until April 11, 1955. The Provincial Superior testified he had no knowledge of the agreement until that date, although Rev. Father Schlinkmann, in a deposition offered in evidence, admitted executing it and stated that he had authority to do so. Although agency cannot be shown by the declarations of an alleged agent, express authority may be shown through the testimony of an agent. *Posko v. Climatic Control Corp.*, 198 Md. 578, 583. The trial court found that there was apparent authority in Rev. Father Schlinkmann, as well as ratification by subsequent acts. It is conceded that the agreement was automatically renewed, and it is not denied that Mrs. Horn performed all of the undertakings of the agreement on her part.

On the question of apparent authority, it was said in *Lister v. Allen,* 31 Md. 543, quoting *Story, Agency,* sec. 443, that "the responsibility of the principal to third persons is not confined to cases where the contract has been actually made under his express or implied authority. It extends further and binds the principal in all cases where the agent is acting within the scope of his usual employment, or is held out to the public, or to the other party, as having competent authority, although, in fact, he has, in the particular instance, exceeded or violated his instructions, and acted without authority. For in all such cases, where one of two innocent persons is to suffer, he ought to suffer who misled the other into the contract, by holding out the agent as competent to act, and as enjoying his confidence." See also *Restatement, Agency,* sec. 8. In *Brager v. Levy,* 122 Md. 554, 559, and *Deane v. Distilling Co.,* 138 Md. 388, 394, it was held that the mere fact that an alleged agent was designated as a "buyer" or "salesman" was not enough to constitute a holding out. In *Abuc Trading, etc., Corp. v. Jennings,* 151 Md. 392, 410, it was pointed out that a general manager may have implied authority to dispose of corporation property in the regular course of business, even though all the facts from which the inference is drawn are not known to the third party, thus drawing a distinction between an implied agency and an agency by estoppel. See also *Penowa Coal Sales Co. v. Gibbs & Co.,* 199 Md. 114, 119; *Development Co. v. Houston,* 179 Md. 441, 445; *Singer Constr. Co. v. Goldsborough,* 147 Md. 628, 633; *Brokerage Co. v. Harrison,* 141 Md. 91, 102.

In the instant case Mrs. Horn admitted that she never communicated with the Provincial Superior or any other officer of the Wisconsin corporation. She testified, without objection however, that "Father John got approval from [the Society in] Rome, and there is a letter in Newark Trust Company stating that he could develop the land out here, and that is his approval that he could develop the land at Holly Hall Terrace, and it is on record at the Bank. * * * the Bank wouldn't have lent him the money to put in the roads and sewers and streets without it." This testimony

was not denied. It was also shown that all proceeds from the sale of land in Cecil County were retained in Maryland subject to the order of Rev. Father Schlinkmann, to be expended on Mission work approved by the religious Society Superiors in Rome, and were not transmitted to the Wisconsin corporation.

It is not denied that Rev. Father Schlinkmann, as Procurator, if not as Superior, was authorized to sell land, and to employ brokers in that connection. As stated in the appellant's brief, "no one would expect a priest to make the circuit in quest of customers". But the appellant contends that making of a long-term contract stands on a different footing, relying upon *C. & P. Telephone Co. v. Murray,* 198 Md. 526. In that case it was held that a sales manager and assistant vice-president of a corporation had no implied authority to bind it to a contract of lifetime employment. The case is readily distinguishable. Exclusive agency agreements of limited duration are not unusual or unenforceable. 1 *Williston, Contracts* (Rev. ed.), sec. 277; *Foster-Porter Enterprises v. De Mare,* 198 Md. 20, 31. This is particularly true in cases involving real estate developments, where the objectives cannot be attained except over a period of years.

On the question of ratification, there was evidence to support the trial court's finding. A picture in evidence, published in a local newspaper in 1952, shows Rev. Father Schlinkmann and Mrs. Horn standing in front of a billboard advertising Holly Hall Terrace, on which Mrs. Horn is stated to be "Exclusive sales representative" for the new development. Mrs. Horn received commissions on every sale or lease made by the corporations until 1955, either directly or through builders, and no question was ever raised as to the authority of Rev. Father Schlinkmann to make these commitments. Rev. Father Jacobs, who was Provincial Superior of the Society and the president of the Wisconsin corporation in 1950, testified that Rev. Father Schlinkmann was authorized to manage the Maryland properties as local agent. The witness knew that he was selling lots, in fact he had specific authority to do so in the Holly Hall Terrace development. The witness knew of the purchase of Beaver Dam Farm.

While the witness denied that Rev. Father Schlinkmann had general authority to sell lots without prior permission, he admitted that on some occasions sales were made and later approved by the corporation; in fact, no action taken by Rev. Father Schlinkmann was ever repudiated. Of course, after the Maryland corporation was formed in 1952, Rev. Father Schlinkmann was treasurer of the corporation by virtue of his office as Mission Procurator, and no directors' meeting was ever held until October, 1955. Notice to him might well be considered to be notice to the corporation. Cf. *Abuc Trading, etc., Corp. v. Jennings, supra,* p. 409.

The appellant argues that even if there were evidence to support the agency, as applied to the general manager of a business corporation, a stricter rule should apply in the case of a religious corporation. We need not review all of the cases cited. In *St. Vincent College v. Hallett,* 201 F. 471, it was noted that there is a distinction between the implied or presumptive authority of the officers of a trading corporation and that of a religious corporation, in regard to the execution of negotiable paper. In the instant case it would appear that the Provincial Superior, who was one of the directors and president of the Maryland corporation, knew that the local Superior was developing properties, acting on behalf of the Maryland corporation that held title since 1952. He knew or should have known that Mrs. Horn had acted as sales agent all along, in every transaction. The main business of the Maryland corporation, as distinguished from the religious order, was the development and sale and lease of residential and business properties. We think the whole course of conduct permits the inference of an implied or apparent authority in Rev. Father Schlinkmann to employ agents, and even exclusive agents, to make sales in the development. We think no distinction can fairly be drawn between sales in the Holly Hall property and the sale of Beaver Dam Farm. If the Maryland corporation is bound by the employment of the brokers in all previous cases, or can be deemed to have ratified them, it would appear to be too late to raise a question of want of authority in connection with the last transaction. Moreover, Mrs. Horn testified that she

gave a copy of the agreement to Rev. Father Schlinkmann in 1950, and if it were lost or not filed among the papers turned over to his successors, she was not to blame. Rev. Father Sterbenz knew that she claimed to be the exclusive agent, at least in regard to sales in all the other developments.

Finally, the appellant contends that the evidence does not sustain a verdict for ten per cent of the sales price. Mrs. Horn testified that the commissions on the sale were ten per cent, according to the schedule of the Real Estate Board of Baltimore, for water front property. The testimony came in without objection. There was no testimony to the contrary, although the appellant now argues that this was not the best evidence, and that it is shaken by the admitted fact that the Baltimore brokers received only five per cent. In the absence of objection, or a demand for production of the schedule, we think the trial court was justified in accepting her testimony.

*Judgment affirmed, with costs.*