## STRAWN ET AL. *v.* JONES ET AL.

[No. 139, September Term, 1971.]

*Decided January 12, 1972.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*Richard B. Bland,* with whom were *Carlyle J. Lancaster* and *Lancaster, Bland, Eisele & Herring* on the brief, for appellants.

*James J. Lombardi* for Shiloh Baptist Church, part of appellees. No brief filed on behalf of Nathan Jones, other appellee.

DIGGES, J., delivered the opinion of the Court.

In the case before us, appellants, Harry and Faber Strawn, docketed a bill of complaint in the Circuit Court for Prince George's County, seeking specific performance of a real estate contract they allegedly entered into with Nathan Jones, one of the appellees. The other appellee, Shiloh Baptist Church of Ardmore, filed a cross-complaint asking that an agreement it had with Jones to buy the same land be declared valid and effective. Judge Loveless in considering this matter dismissed the initial bill and held that the pact between Jones and the church was binding. From that ruling this appeal is taken.

The sequential development of the facts, though basically uncontroverted, is complex and needs to be set out in some detail. It begins on October 13, 1967 when Faber Strawn, professing to be a representative of Harry, signed a contract "H. O. Strawn by Faber W. Strawn" in an attempt to purchase a 9/10 acre tract of land in

Prince George's County from its owner, Nathan Jones. There was a stipulation in the agreement that:

> "Settlement on this contract is contingent upon and will be immediately after settlement of the contract between H. O. Strawn and Washington Suburban Sanitary Commission for the property on the S.E. corner of Brightseat Road and Ardwick Road, Ardmore, Maryland."

As of May 21, 1969, some nineteen months later, this condition had not been satisfied and Jones informed appellants of his intention to declare the contract null and void if there was no settlement within ten days. In response Faber requested a thirty day extension which was denied. Prior to these communications, Jones, apparently sensing that his agreement with the Strawns would never be brought to fruition and encountering financial difficulties, contracted on March 3, 1969 to sell this same land to Roland Kenner, who was acting on behalf of the Shiloh Baptist Church. Kenner, before signing this agreement, was informed of the earlier contract with Strawn but was assured by Jones that it had been previously terminated. On November 17, 1969, for some unexplained reason, another contract, this time between Jones and the Shiloh Church itself, was entered into for the same fraction of an acre. Faber Strawn in the interim, became aware of the new buyer around the "early summer" of 1969 when he noticed Shiloh's trustees clearing off the land. He stopped and in the ensuing conversation even compared the terms of his contract to the church's. Finally, on March 4, 1970, nearly two and one-half years after the Strawn-Jones compact, appellants notified Jones' attorney of their intention to effectuate the terms of the agreement, though still admitting that no settlement with the Sanitary Commission had yet occurred. Their letter stated:

> "It appears that the contingency will be taking place within the next month or so and this letter

> is simply to put your client on notice that Mr. Strawn will be ready to settle per the terms of the contract as soon as the contingency is met."

Appellee promptly answered that he considered "the contract is null and void." The Strawns then brought suit in equity for specific enforcement.

On appeal the following questions are presented by appellants for our consideration: does the agreement comply with the provisions of the Statute of Frauds; was there mutuality of remedy; and if settlement is to occur in relation to a specific event, does the law impute that event must take place within a reasonable time. Under our view of this case, however, we need not focus on any of these issues since we find there is no proof that a contract between Nathan Jones and Harry Strawn ever actually existed.

It is well established law that an agent can enter into a contractual relationship with a third party to the extent of that agent's prescribed authority. *Whittle v. Brown*, 217 Md. 161, 168, 141 A. 2d 917 (1958); *Daskais v. Kline*, 188 Md. 541, 53 A. 2d 289 (1947); *Brown v. Hogan*, 138 Md. 257, 113 A. 756 (1921). And any document signed for the principal by a representative having proper verbal authority will satisfy the provisions of the Statute of Frauds. *Whittle v. Brown, supra* at 167. Appellants here are seeking refuge in this law and claim that Harry empowered Faber to execute all the documents necessary to purchase Jones' land. In order for the Strawns to prevail on this point they must prove that Faber not only was Harry's agent but that he also had the proper authority to bind his principal to the transaction. A review of the record discloses that this burden has not been met. The only evidence which in any way supports appellants' position is the testimony of Faber Strawn, who on this particular subject stated:

> "Q. Who signed the name H. O. Strawn? A. I did.
>
> Q. On what basis? A. On the basis that I had been given permission to represent him.

Later he said:

> "Q. When did he [H. O. Strawn] tell you he
> wanted it [the property]? A. Because he
> had owned about seventy acres around it at
> one time and was very much interested in
> that piece of property."

Express agency and the specific authority it bestows may be demonstrated by the agent himself testifying in court either verbally or through depositions. *Whittle v. Brown, supra; Salvatorian Mission v. Horn,* 210 Md. 475, 480, 124 A. 2d 268 (1956); *Posko v. Climatic Control Corp.,* 198 Md. 578, 583, 84 A. 2d 906 (1951). However, all Faber presented in this case were vague references which are insufficient to exhibit the scope of his authority. Even assuming Faber has established his agency, that alone does not allow him to do more than merely negotiate for Harry. And the capacity to negotiate by itself does not give him the right to bind his principal to a contract. *Karupkat v. Zoph,* 140 Md. 242, 117 A. 761 (1922). In *Daskais v. Kline, supra* at 551, when faced with a similar problem, we said: "A broker or agent has not the power or authority to bind his principal by signing a contract for him, unless he is authorized so to do." In the case before us there is no evidence of any authority to bind the principal and significantly the trial court found as a fact that:

> "In the instant case Faber Strawn has the burden of proof to establish by the preponderance of the evidence that when he signed for Harry Strawn on the contract that he had the authority as agent to do so, or absent such authority that there was subsequent ratification by Harry as the alleged principal. This burden has not been met."

We find no clear error on the part of the trial judge here, Maryland Rule 886, in fact we agree with his determination.

Appellants next suggest that their agency relationship

emanates from a written power of attorney but they also fail on this point since the document upon which they rely specifically limits Faber's powers. It states: "we, Harry O. Strawn and Carrie C. Strawn, his wife . . . appoint Faber W. Strawn . . . our . . . lawful attorney . . . to manage, mortgage, lease or otherwise encumber, and to sell and convey . . . any and all real estate which we presently own. . . ." This writing cannot authorize or ratify the contract here, as that contract involves the purchase rather than the sale of real property for Harry. We note that Faber's acts could have been subsequently ratified by Harry in which case the agreement would then become binding. *Wohlmuther v. Mt. Airy*, 244 Md. 321, 326, 223 A. 2d 562 (1966). However, the only evidence of ratification is, possibly, appellants' filing their bill of complaint on May 22, 1970, since the docketing of suit can be considered as ratification. *Lawson v. Mullinix*, 104 Md. 156, 170, 64 A. 938 (1906) ; *Engler v. Garrett*, 100 Md. 387, 397, 59 A. 648 (1905). But the Strawns cannot find solace on this point. The compact that is ratified could only take effect as of its affirmation date on May 22, but by then it is subject to the earlier (March 3 or November 17, 1969) contracts of the Shiloh Church. *Lissau v. Smith*, 215 Md. 538, 547, 138 A. 2d 381 (1958). Shiloh is a bona fide purchaser, even though it was aware of the Strawns' efforts to acquire the land, because no valid agreement between appellants and Jones existed when the church contracted for the property.[1] Since the Strawns on May 22 knew that the church had obtained an interest in the 9/10 of an acre, their contract, even if it becomes valid on that date, fails because they are not bona fide purchasers and they therefore cannot prevail

---

1. Shiloh would not be a bona fide purchaser in this case had the Strawn-Jones agreement been ratified prior to the church's contract with Jones. This is because the church, even though informed by Jones that the Strawn-Jones pact had been terminated, was nonetheless put on notice of a possible prior agreement and it cannot simply accept Jones' statement that the earlier contract was void. Shiloh had a duty to investigate the matter once it had knowledge concerning a previous contract. *Blondell v. Turover*, 195 Md. 251, 257-58, 72 A. 2d 697 (1950).

to the exclusion of Shiloh. *Lissau v. Smith, supra* at 547; *Grayson v. Buffington,* 233 Md. 340, 343, 196 A. 2d 893 (1964) ; *Blondell v. Turover,* 195 Md. 251, 257, 72 A. 2d 697 (1950) ; *Engler v. Garrett, supra* at 398. Accordingly, the Shiloh-Jones contract is valid and binding. As we said in *Lissau v. Smith, supra* at 547-48: "if a vendor 'after making a contract, should enter into a second agreement to sell the land to B, or should convey it to B, under such circumstances that B is *not a bona fide* purchaser, etc., then the prior vendee can compel a specific performance against the vendor and B.' "

We find no error in the trial court's ruling and affirm it.

*Decree affirmed. Costs to be paid by the appellants.*