MARIE DOROTHY MILLER *v.* LOIS H. MUELLER

[No. 1093, September Term, 1974.]

*Decided September 9, 1975.*

The cause was argued before MOYLAN and LOWE, JJ., and

JOHN C. ELDRIDGE, Associate Judge of the Court of Appeals of Maryland, specially assigned.

*Sidney Blum* for appellant.

*Paul Mark Sandler* for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

This case concerns the authority of an attorney to enter into a contract for the sale of his client's property.

Lois Mueller and Marie Miller are sisters. In 1969, they acquired a parcel of real estate, improved by a house, as joint tenants, assuming an existing mortgage on the property. Differences arose between the sisters, and in January 1961 Lois Mueller moved from the house. Marie Miller has made the mortgage payments on the property since February 1971. In the latter part of 1971 Lois Mueller was approached by Sidney Blum, an attorney, in the clerk's office of the Circuit Court of Baltimore City where she was employed. Blum told Mrs. Mueller that he represented her sister who was having difficulty in making the mortgage payments. Mrs. Mueller replied that she would make the mortgage payments if she could have access to the house. Mr. Blum said nothing and left. Mrs. Mueller was again approached by Mr. Blum in the beginning of 1973, and he asked what amount she would take in settlement. She told Blum that she did not know what she would take and that an appraisal would be necessary.

In February 1973, Mrs. Mueller spoke with John P. O'Ferrall, an attorney and an auditor in chancery for the Supreme Bench of Baltimore City, when he visited the clerk's office in his official capacity. The two were friends, and Mrs. Mueller told him of her difficulties with her sister and her conversations with Mr. Blum. She asked him to help her reach a settlement with her sister, and they discussed the value of the property and a possible sale price. O'Ferrall sent Blum a letter, dated February 27, 1973, stating that he represented Lois Mueller and that she would convey her interest in the real estate for $4,750. Enclosed with the letter

was a sheet prepared by Mrs. Mueller showing the expenditures she had made for house repairs and her share of the down payment and mortgage payments. These expenditures and payments totaled $4,750, the price quoted in the letter.

Blum and O'Ferrall had several conversations concerning a possible settlement subsequent to the February 27 letter. Mrs. Miller had objected to the amounts of some repairs on Mrs. Mueller's breakdown sheet and rejected the offer to purchase Mrs. Mueller's interest for $4,750. Blum requested that either the bills to substantiate the $4,750 figure be shown or that a new settlement price be agreed upon. O'Ferrall thereupon met with Mrs. Mueller in the courthouse on July 9, 1973. The accounts of this meeting, and what transpired afterwards, differ. According to Mr. O'Ferrall, Mrs. Mueller suggested that she was willing to assume the mortgage and pay $2,500 for Mrs. Miller's interest in the property, or she would accept $2,500 for her interest in the property. Later the same day, O'Ferrall wrote to Blum as follows:

> "I spoke with Lois today concerning our telephone conversation of recent date. She has advised me that she is willing to pay her sister the sum of $2500.00 for the sister's interest in the property and she will assume the payment of the existing mortgage on the property. In the alternative, she will convey her interest in the property to her sister for $2500.00.
>
> "Please let us know whether either of these propositions will clear up this matter."

No copy of this letter was sent to Mrs. Mueller, but O'Ferrall testified that he did tell Mrs. Mueller that he had passed her suggestion on to Mr. Blum.

Blum wrote to O'Ferrall on August 21, 1973, stating that Mrs. Miller had agreed to pay Lois Mueller $2,500 for her interest in the property and that settlement had been set for August 24, 1973. According to O'Ferrall, he called Lois Mueller the day he received the letter from Blum to inform

her of the settlement. He requested that she come to his office to sign a power of attorney so that she would not have to attend the settlement. She told him that she had not authorized such a settlement and that she would not sign a power of attorney to sell her interest for $2,500.

Mrs. Mueller's account of the matter differed somewhat from that of Mr. O'Ferrall. According to Mrs. Mueller, O'Ferrall, in the summer of 1973, told her that Blum had said that Mrs. Miller was willing to pay her $2,500 for her interest in the property. Mrs. Mueller replied that she would give her sister $2,500 and assume the mortgage payments, but that she would not take $2,500 for her own interest. She testified that at no time did she ever authorize O'Ferrall to make any offer or demand for her interest in the property, and that even the $4,750 figure previously discussed, representing her total expenditures, was not an offer but was merely a suggestion of a possible price. Mrs. Mueller said that the first time she heard of the offer or proposed settlement was on the morning of August 24, the date set for settlement, when O'Ferrall called to request a power of attorney, and that she had not known of the July 9 letter offering the property for $2,500.

When, during the telephone conversation in August 1973, Mrs. Mueller told O'Ferrall that she would not settle for $2,500, O'Ferrall informed her that he could no longer act as her attorney. She asked him for a bill, but he replied that she owed him nothing. Mr. O'Ferrall brought Mrs. Mueller the file concerning the case, and she testified that this was the first time she had seen either the February 27 or July 9 letters. Lois Mueller did not attend the settlement scheduled for August 24.

Marie Miller filed a bill of complaint in the Circuit Court for Baltimore County, seeking specific performance as well as damages. The bill alleged that Marie Miller had received an offer from Lois Mueller for the sale of Mueller's interest in the house, that the offer had been accepted, that Lois Mueller had subsequently refused to consummate the agreement, and that because of this refusal, Marie Miller

had lost an advantageous mortgage and incurred certain costs necessary to obtain the mortgage.

The circuit court (Raine, C. J.) found that the letters between Blum and O'Ferrall constituted a sufficiently clear and definite agreement to satisfy the Statute of Frauds.[1] But the court found that the question of O'Ferrall's authority to make an offer on behalf of Mrs. Mueller was more "troublesome." The court characterized the relationship between O'Ferrall and Mueller as being "more of two friends or fellow employees than it does of the typical lawyer-client relationship." The court pointed out that the evidence showed "a confusion about the matter that very frequently results from a lay-lawyer relationship that is . . . handled on a friendly or fellow employee basis" which would not have occurred "if their arrangement had been the typical lawyer-client relationship and not the much more casual relationship that . . . the testimony in this case indicates." The circuit court found, "under this unusual set of circumstances," that there had not "been a sufficient showing of the attorney's authority to bind the respondent." The court was of the view that the evidence, instead of proving O'Ferrall's authority to bind Mrs. Mueller, showed "a misunderstanding between the lawyer and client . . . ." From the judgment dismissing her bill of complaint, Mrs. Miller appeals.

## (1)

Mrs. Miller's first contention is that the trial court clearly erred in finding that no attorney-client relationship existed between Mrs. Mueller and Mr. O'Ferrall. We believe that the appellant has misinterpreted the circuit court's findings. The court considered the nature of the relationship, the fact that no fee was paid, that no conferences in the attorney's

---

1. Appellee does not in this Court reiterate her argument concerning the Statute of Frauds as it applies to the sufficiency of the memorandum. Nor has it been argued that the Statute of Frauds would require that the agent's authority be in writing. *See, e.g.,* Whittle v. Brown, 217 Md. 161, 141 A. 2d 917 (1958); Moore v. Taylor, 81 Md. 644, 32 A. 320 (1895); Annot., 27 A.L.R. 606 (1923). Accordingly, we do not consider what bearing, if any, the Statute of Frauds might have on the issues in this case.

office were held, and that Mr. O'Ferrall did not send copies of his correspondence with Sidney Blum to Mrs. Mueller, and concluded that the lawyer-client relationship was not a typical one. The court then considered this factor, together with the testimony directly bearing upon the authority question, in determining whether O'Ferrall was authorized to enter into a contract of sale on behalf of Mrs. Mueller. The course of conduct between attorney and client is significant in determining what authority has been conferred upon an attorney by his client. *Nellis v. Massey*, 108 Cal.App.2d 724, 239 P. 2d 509, 512 (1952). But the trial court did not dismiss the complaint on the basis of a finding that the relationship was not a typical lawyer-client relationship, but rather on its finding that there was no proof that O'Ferrall had actual authority to enter into a binding contract.

The testimony on the question of O'Ferrall's actual authority is conflicting. O'Ferrall's own testimony concerning his authority to make an offer binding on Mrs. Mueller is far from clear. He testified that when he spoke to Lois Mueller about the $2,500 offer, she "suggested" that she would be willing to accept $2,500 for her interest. He also testified that, although he "was not authorized to sell the house," he believed that he had been authorized to deliver the "intent" of the July 9 letter. Mrs. Mueller, on the other hand, testified that she had never authorized O'Ferrall to make any firm offer to sell her interest. Her testimony concerning the $2,500 offer was that she had specifically told O'Ferrall that she would not accept $2,500 for her interest in the house.

Under Maryland Rule 1086, the judgment of the trial court will not be set aside on factual grounds unless clearly erroneous. *Crest Inv. Trust v. Comstock*, 23 Md. App. 280, 327 A. 2d 891 (1973). An appellate court will not weigh or evaluate conflicting evidence, which is the province of the trial court, but will consider only whether there is any evidence legally sufficient to support the findings of the trial court. *Rogers v. Rogers*, 271 Md. 603, 319 A. 2d 199 (1974); *Carling Brewing Co. v. Belzner*, 15 Md. App. 406, 291 A. 2d 175 (1972). Clearly there was sufficient evidence supporting

the trial court's finding that Lois Mueller did not actually authorize her attorney to make an offer to sell her interest in the property.

(2)

The appellant Miller next contends that even if O'Ferrall were not expressly authorized to execute a contract of sale, he had the implied power to do so if necessary to accomplish the purpose of his employment. In support of this position, she has relied on *McGinnis v. Chance,* 247 Md. 393, 399-400, 231 A. 2d 63 (1967), which held that a client is bound by the acts of his attorney according to the ordinary principles of agency.

The mere retention of an agent, broker or attorney, to procure a purchaser of real estate, or to negotiate the terms of a real estate transaction, does not confer upon the agent the implied authority to make a contract of sale. *Strawn v. Jones,* 264 Md. 95, 99, 285 A. 2d 659 (1972); *Daskais v. Kline,* 188 Md. 541, 551, 53 A. 2d 289 (1947); *Karupkat v. Zoph,* 140 Md. 242, 245, 117 A. 761 (1922); *Brown v. Hogan,* 138 Md. 257, 266-270, 113 A. 756 (1921). *See also Kaufmann v. Adalman,* 186 Md. 639, 648, 47 A. 2d 755 (1945).

In *Brown v. Hogan, supra,* the owner of a house told his attorney that the property was for sale and authorized him to find a purchaser at a specified price. The attorney executed a contract of sale, on behalf of the owner, with Hogan. The attorney did not notify the owner of the contract until after the owner had executed a contract to sell the property to Brown. The trial court ordered specific performance in favor of Hogan, but the Court of Appeals reversed, holding that an agent does not have implied authority to execute a contract to sell real estate which is binding on his principal. The Court, observing that there are two lines of authority on the question, stated that "those [cases] which hold that a broker or agent has an implied power to make a contract of sale of real estate, when he is authorized to obtain a purchaser or to sell, are greatly in the minority," and held that in Maryland an

agent has no such implied power. *Brown v. Hogan, supra,* 138 Md. at 266.

Recently, in *Strawn v. Jones, supra,* 264 Md. at 99, the Court of Appeals reiterated:

"Even assuming Faber has established his agency, that alone does not allow him to do more than merely negotiate for Harry. And the capacity to negotiate by itself does not give him the right to bind his principal to a contract."

These cases are dispositive of the contention that O'Ferrall, as an agent, had the implied authority to bind Mrs. Mueller to a contract.

### (3)

Appellant's final contention appears to be that O'Ferrall was clothed with *apparent* authority to make a binding offer on behalf of Mrs. Mueller.

Apparent authority may arise when the actions of the principal, reasonably interpreted, cause a third person to believe in good faith that the principal consents to the acts of the agent. Apparent authority also may arise when the principal knowingly permits the agent to act in a certain manner as if he were authorized. The action or manifestation of authority giving rise to the reliance must be that of the principal, and the reliance by the third person on the action or manifestation of authority must be reasonable. *Parker v. Junior Press Printing,* 266 Md. 721, 727-730, 296 A. 2d 377 (1972); *Reserve Ins. Co. v. Duckett,* 240 Md. 591, 600-601, 214 A. 2d 754 (1964); *Restatement (Second) Agency* § 27, comment A; Mechem, *Outlines of Agency* § 94.

The only basis for appellant's argument that O'Ferrall was acting within the scope of apparent authority is the fact that he was retained by Mrs. Mueller to negotiate the terms of a possible settlement which anticipated the sale of an interest in real estate. As with implied authority, the mere retention of an attorney to negotiate a settlement, without

any other action on the part of the principal, does not create the apparent authority of the agent to execute a contract imposing new liabilities or burdens on his client. *Kallen v. Pollock*, 412 Pa. 281, 194 A. 2d 227, 229 (1963). *See Erickson v. Civic Plaza Nat. Bank of Kansas City*, 422 S.W.2d 373 (Mo.App. 1967); *Morr v. Crouch*, 19 Ohio St.2d 24, 249 N.E.2d 780 (1969); *Starling v. West Erie Avenue Building and Loan Ass'n*, 333 Pa. 124, 3 A. 2d 387 (1939). Since, in the absence of express authority, an attorney has no implied authority to execute a contract for the sale of real estate binding on his client, it cannot be said that Mrs. Miller acted reasonably if her reliance on O'Ferrall's authority was based solely on his status as Mrs. Mueller's attorney. The record does not indicate any other actions by Mrs. Mueller upon which Mrs. Miller relied, such as executing a written general power of attorney as in *Dixon v. Haft*, 262 Md. 611, 278 A. 2d 566 (1971), or representations by Mrs. Mueller that Mr. O'Ferrall handled all matters pertaining to the settlement, as in *Hamilton v. Coster*, 249 Mass. 391, 144 N. E. 226 (1924). Mrs. Miller presented no evidence that Mrs. Mueller knew of the two offers made by O'Ferrall to Blum, so that it could be said that she knowingly permitted or tolerated her agent to act as though authorized, creating the appearance of authority. *Hobdey v. Wilkinson*, 201 Md. 517, 94 A. 2d 625 (1953).

*Order affirmed.*
*Appellant to pay costs.*