MILTON GOLDMAN *vs.* DANIEL L. BRINTON AND RICHARD B. TIPPETT, RECEIVERS, ET AL.    THE DROVERS' AND MECHANICS' NATIONAL BANK *vs.* DANIEL L. BRINTON AND RICHARD B. TIPPETT, RECEIVERS, ET AL.

*Estoppel to Assert Priority of Mechanics' Lien—Oral Agreement to Waive Lien—Assignment of Mechanics' Lien.*

The holder of a mechanics' lien on unfinished houses who induced persons to loan money to complete the same by promising to waive the priority of his lien, but who subsequently refuses to sign such waiver, is estopped to set up his lien as against those making the advances.

Receivers were appointed to take possession of certain unfinished houses, the builder of which was insolvent. The holders of mechanics' liens on the houses, all agreed verbally that the receiver should borrow the money necessary to finish the houses, and that their liens should be postponed to the payment of such borrowed money. The

money was borrowed and the houses completed. One of the lien claimants refused to sign a waiver of his lien and alleged that his promise so to do was unenforceable under the statute of frauds because not in writing. *Held*, that both this lien claimant and his assignee are estopped under these circumstances from claiming priority.

Equity will in some cases enforce against one party an oral contract relating to land when the other party has done certain acts upon the faith of the contract and in execution of it.

The assignee of a mechanics' lien takes it subject to the equities enforceable against it in the hands of his assignor.

Appeal from an order of the Circuit Court No. 2, of Baltimore City (STOCKBRIDGE, J.), overruling exceptions and finally ratifying an auditor's account.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*S. S. Field*, for the appellants.

1. Goldman's alleged declarations and promises were only preliminary to a written contract, and were not a binding engagement because never completed by his signing the waiver. It it clear that it was the intention and understanding of all the parties to it that this waiver of liens was to be put in writing and signed before it took effect; and such being the case, it was never a completed contract as to Goldman because he never signed it. And so are all the authorities. *Irish* v. *Pulliam*, 32 Nebraska, 24; *Morrill* v. *Co.*, 10 Nev. 125; *Frederick* v. *Fasnacht*, 30 La. An. Pt. 1, p. 117; *Congdon* v. *Darcy*, 46 Vermont, 478; *Ridgway* v. *Wharton*, 6 H. L. 238; *Wills* v. *Carpenter*, 75 Md. 81; *Phillips Mech. Lien*, sec. 272.

2. The verbal promise to waive his mechanics' lien was not enforceable because such lien is an interest in land and cannot under the statute of frauds be waived by parol. 8 *Ency. Law* (1st ed.) 697; *Leavitt* v. *Pratt*, 53 Me. 147; *Ins. Co.* v. *Coates*, 14 Md. 297; *Ins. Co.* v. *Stinson*, 103 U. S. 25; *Phillips on Mech. Lien*, sec. 11.

3. There can be no estoppel on the ground of misrepre-

sentation, because there was no misrepresentation of any existing fact. .The doctrine does not apply to a misrepresentation of intention, or to a promise not performed. *Leavitt* v. *Pratt*, 58 Me. 147 ; *Frazee* v. *Frazee*, 79 Md. 30; *Schaidt* v. *Blaul*, 66 Md. 148 ; *Park Assn.* v. *Shartzer*, 83 Md. 14. Such representations or promises cannot form the basis of an estoppel. *Bigelow on Estoppel*, 574, and note ; *Kerr on Fraud and Mistake*, 88, 90 ; 1 *Jaggard on Torts*, 583 ; *Gaither* v. *Slack*, 89 Md. 727 ; *Johnson* v. *Stockham*, 89 Md. 358 ; *Fenwick* v. *Grimes*, 5 Cranch C. C. 439 ; *Jorden* v. *Money*, 5 H. L. 185 ; *Maddison* v. *Alderson*, 8 App. Cas. 473 ; *Long* v. *Woodman*, 58 Maine, 49 ; *Brightman* v. *Hicks*, 108 Mass. 248 ; *Langan* v. *Sankey*, 55 Iowa, 52.

"A promise, upon which the statute of frauds declares that no action shall be maintained, cannot be made effectual by estoppel, merely because it has been acted upon by the promisee, and not performed by the promisor." *Brightman* v. *Hicks*, 108 Mass. 248. And the same is true of a contract void as against public policy. *Langan* v. *Sankey*, 55 Iowa, 52. And so in every case of a mere promise to do or not do something if it does not amount to a legally binding contract, it cannot be made binding by way of estoppel. *Bigelow on Estoppel*, 574.

4. In discussing the legal propositions the facts found by the Court have been assumed to be true. I now submit : 1. That Goldman never *unqualifiedly* promised to sign the waiver of liens. 2. That the receivers were not justified in relying upon Goldman's acts and verbal promises; and that they in fact did not do so; and that the receivers are estopped by their sworn petition of August 18, 1896, from now saying that they did.

*Daniel L. Brinton* and *Richard B. Tippett*, for the appellees.

FOWLER, J., delivered the opinion of the Court.

The questions presented by this appeal grow out of exceptions to several auditor's accounts which were ratified by

order of Circuit Court No. 2, of Baltimore City, in the case of *Andrew* v. *Shinnick*, pending in that Court.

A bill for injunction and receiver was filed in the case just mentioned, alleging that William F. Shinnick, who was building a number of houses on the north side of North avenue, between Pulaski and Smallwood streets, in the city of Baltimore, was insolvent and unable to complete the partly finished buildings, and that unless the relief asked was granted the claims of the plaintiff and the other material-men, creditors of the defendant, would be greatly imperilled. The appellees, Messrs. Tippett and Brinton, were appointed receivers, with power to take possession of and complete the houses. They were also authorized to borrow the necessary money for that purpose, and to enable them so to do, the Court on their petition ordered that the money so borrowed should be a first lien on the proceeds of sale of the property in question. This order was passed on the 18th of August, 1896, and the following agreement was filed with it: " We, the undersigned, creditors of Wm. F. Shin-nick, hereby consent to the receivers in the above case bor-rowing sufficient money by mortgage or otherwise, to finish the building and construction of the twenty-two houses mentioned in the above cause, and we hereby consent to said mortgages, or borrowed money so raised, being prior liens over our respective claims." All the creditors with the exception of one signed this agreement or agreed in writing to be bound by it. That one, is the appellant, Milton Goldman. In pursuance of the authority given them by the order of Court just referred to, the receivers borrowed the sum of $15,000, completed and sold the houses. The sales have been duly ratified and the proceeds are in Court for distribution. The auditor's report and accounts allow the receivers in full for the sum of $15,000 borrowed money, and distributed the balance among the other credi-tors. From the order ratifying the account making this allowance, and thus making the borrowed money-claim of $15,000 a prior lien, the appellants, Goldman and the Drov-

ers' and Mechanics' Bank, have appealed—the interest of the latter being that of an assignee of the mechanics' lien claim of the former against the houses, which were finished and sold by the receivers. The mechanics' lien claim of Goldman thus assigned to the bank was duly recorded, and unless Goldman or his assignee has waived this claim or unless he is in equity and good conscience estopped now to set it up against the borrowed money-claim or other lien creditors, it must be paid in full at their expense. In order to determine the present *status* of Goldman's claim, now in the hands of the bank, his assignee, it will be necessary to consider the testimony upon which the receivers rely to sustain their contention that to allow Goldman's lien the priority claimed for it would violate well-settled principles of equity and the plainest rules of common honesty. We will, therefore, in the *first* place examine the testimony.

It appears that after the receivers took possession of the property under the orders of Court above referred to, a meeting of creditors was called to determine whether the property should be sold in its unfinished condition, and it was determined by them, Goldman being among the number, that the receivers should get authority from the Court to borrow money to finish the houses. A second meeting of creditors, including Goldman, was held at which it was agreed the receivers should go ahead and complete the houses and borrow money for that purpose. It was testified that Goldman knew the money had been borrowed and had to be paid back out of the proceeds of sale; that it was well understood between Goldman and all the other lien creditors that their claims were to be postponed, and that Goldman had unequivocally agreed to sign the agreement which was prepared to effectuate this plan and to enable the receivers to get the necessary order passed by the Court. It seems, however, that although Goldman had promised so to do he in point of fact never did sign the agreement giving this claim for borrowed money priority over his lien, although the receivers were under the impression that he

had in this respect complied with his verbal agreement, and they so alleged in their petition on which the order was passed to authorize them to borrow the money.    When the order, however, was presented to the Judge it was discovered that Goldman had not signed the agreement, but upon the assurance that Goldman had given his verbal assent, the order was signed.    Goldman was informed of the passage of the order, and he again agreed to sign the agreement as filed in Court.    He made frequent promises thereafter to the same effect, but he performed none of them.    The witness Friedel, who saw Goldman more frequently than anybody else in reference to this matter, says that he never, at any time, indicated that the agreement was not a proper paper to sign.    In spite of all this, and in the face of the undisputed testimony that Goldman acted as one of the committee of creditors to aid the receivers in completing the buildings, and was one of the auditing committee which authorized the expenditure of this very money which he is now claiming should be first devoted to the payment of his claim, it is gravely contended that he has done nothing which will estop him.    " There is no doubt," said Mr. Tippett, one of the appellees, in his testimony, " that he (Goldman) was the head and front of the whole scheme to finish up this property by the receivers, and assenting to the receivers to borrow the money and make it a first claim against the property."    We have carefully examined the testimony and think it fully justifies the statement just quoted.    Under these circumstances it is clear that the contention of Goldman is based upon a palpable fraud, and that he is attempting to use the statute to effectuate his purpose.    But a Court of Equity will not allow this.    " It is often said that as the statute itself was intended for the suppression of fraud, it is but subserving more effectually the ends of its enactment for Courts of Equity to interpose, and prevent it being made, by the liberty it afforded a party of protecting himself under its cover, the very engine and instrument of fraud."    *Brown Stat. of Fraud,* sec. 438.

But in a subsequent section the learned author whose language has just been cited states this proposition in a much stronger and more striking manner. "The correct view appears to be that *equity* will at all times lend its aid to defeat a fraud, notwithstanding the statute of frauds." Upon this simple ground, he says, the many and apparently conflicting decisions upon this and kindred questions may be reconciled. Although counsel for appellants has with much industry made a large collection of authorities to sustain the position he has assumed in this case, we do not think it necessary to comment upon them in detail. Most of them doubtless are correct rulings upon the facts involved, but they have no application to *this* case. There can, of course, be no question that Courts of *law* will often allow the statute of frauds to be used as a shield and indeed sometimes as a sword, when equity would not permit such a course—especially where, as in this case, if we have drawn correct conclusion from the testimony, the appellees and the creditors they represent, relying upon Goldman's verbal agreement faithfully executed their part of the agreement by borrowing the sum of $15,000 and finishing the houses. In section 447 *Brown's Stat. Frauds* it is said: "The next class of cases in which equity intervenes to enforce verbal contracts, notwithstanding the statute of frauds, consists of those where one party has done certain acts in part execution, or upon the faith of the contract, with the knowledge and consent of the other." The application of this well-settled rule to the facts of this case is so obvious that further comment is unnecessary.

We have thus disposed of the controlling question in the case without citing or commenting upon the numerous decisions relied upon by the defendant, because we think the general and well-settled principles which have been referred to are sufficient for the present purpose.

Having arrived at the conclusion that Goldman has no standing in a Court of Equity to enforce his mechanics' lien claim, does his assignee occupy any better position?

We think the answer to this question is apparent. The assignee of a mechanics' lien claim which, of course, is not a negotiable instrument, occupies the same position and has the same rights and is subject to the same equities in respect to the original parties as the law gives to the assignee of a judgment, or any non-negotiable *chose* in action. These are well settled. Thus in cases of a judgment the assignee takes subject to all equities existing between the parties thereto ; and it is immaterial whether he had notice or not. He occupies the same position the judgment-creditor would have occupied in the absence of assignment. *Black on Judgments*, sec. 427. Therefore the Drovers' and Mechanics' Bank, though itself innocent of any fraud, will not be allowed to escape the consequences of the fraud of its assignor.

What we have said disposes of this appeal, and we need therefore not consider the question raised and discussed as to the constitutionality of the Act of 1898, chap. 502, which repealed and re-enacted the mechanics' lien law—so far as it applies to Baltimore City.

*Orders affirmed and cause remanded.*

(Decided December 6th, 1899).