RESERVE INSURANCE COMPANY *v.* DUCKETT ET AL.

[No. 426, September Term, 1964.]

592

*Decided December 7, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY, OPPENHEIMER and McWILLIAMS, JJ., and PROCTOR, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*Donald J. Caulfield,* with whom was *Bond L. Holford* on the brief, for the appellant.

*Robert T. Barbour,* with whom were *George F. Zverina* and *Jerrold V. Powers* on the brief, for the Cornblatts, two of the appellees.

Submitted on brief by *Kenneth E. Pruden* for George Francis Duckett, another appellee.

Submitted on brief by *Thomas B. Finan, Attorney General,* and *R. Randolph Victor, Assistant Attorney General,* for the Unsatisfied Claim and Judgment Fund Board, the other appellee.

PROCTOR, J., by special assignment, delivered the opinion of the Court.

Sometime in 1958 George Francis Duckett (Duckett) was involved in an automobile accident, with the result that it became necessary for him to obtain insurance under Code (1957), Art. 66½, Sec. 122 (Security required following accident). Shortly thereafter, Duckett received from Davis & Davis Insurance Company (Davis) a letter in which, according to Duckett, they said they would insure him. Duckett went with his father to the office of Davis in Baltimore. On July 31, 1959, an SR· 22 form was filed with the Department of Motor Vehicles certifying that Duckett had obtained necessary insurance. There is no evidence as to the name of the insurance company which initially filed this form for Duckett. However, he testified that he was "with Reserve" (Reserve Insurance Company) for three and a half years prior to September 7, 1961.

On March 9, 1961, Reserve issued its Combination Automobile Policy No. AC 9056 3822 under which it insured Duckett for the period of six months from March 7, 1961, to September 7, 1961, 12:01 a.m. standard time, at the address of the named insured. This policy was countersigned by St. Paul Agency, Inc. (St. Paul), which name was typed on the policy, by J. S. McEachern, Authorized Representative, whose name was placed on the policy by rubber stamp. On the face of this policy, near the upper right hand corner, the word "Agent" is printed. Under that was typed the name "Davis & Davis" and the address "Seven St. Paul Street, Baltimore, Md."

On March 3, 1961, Reserve sent to the Department of Motor Vehicles an SR 22 form certifying that Duckett was insured by the policy to which reference has just been made "Effective from 3/7/61 to 9/7/61—Effective date of this certificate 3/7/61." This was signed on behalf of Reserve by the McEachern rubber stamp.

Reserve offered in evidence a document described by the witness, Cooke, a vice-president, as "a daily report." With one insignificant exception, this is a carbon copy of the face sheet of the policy referred to above. Mr. Cooke testified that "It is the copy which the agent sends to the home office, as an indication that it has established a relationship between the in-

sured and ourselves." On this report, in addition to the typed name "Davis & Davis" under the printed word "Agent," there was placed over the typed name "St. Paul Agency, Inc." a rubber stamp reading "Davis & Davis Insurance Agency, Inc., Baltimore, Maryland."

Duckett testified that, three or four days before the expiration of the policy referred to above, he had mailed to Davis a money order covering the premium for a renewal of such policy. However, although not mentioned below or in briefs or argument, one of the exhibits is a bill of Davis to Duckett covering a renewal policy on which under the printed words "Date Due" were typed the words and figures:

| "Paid M. O. | 9/8/61 | 46.50 |
| 1st | 10/8/61 | 16.00 |
| 2nd | 11/8/61 | 16.00" |

The Court construes "M. O." to be an abbreviation of money order.

On September 7, 1961, at approximately 6:05 p.m. Duckett was involved in an automobile accident with a vehicle operated by Samuel G. Cornblatt and owned by Celeste Carp Cornblatt. On, apparently, September 8, 1961, this accident was reported by Duckett to Davis. He was informed that he should have notified Reserve but that Davis would do so. He talked with a Mrs. McAllister. He told her that he had received a letter from the Commissioner of Motor Vehicles stating that if he did not send in the "blue form" (obviously SR 22) he would have to send in his license. He testified that that was why he went to see Davis. He asked Mrs. McAllister "Am I covered?" She went into her files and took out his papers and said "Yes, you are insured already." When Duckett reported the accident to Reserve they sent him a letter stating that he was not covered.

On September 9, 1961, Duckett received a Combination Automobile Policy issued by Reserve which was a "Renewal of No. AC 9056-3822." The policy period was six months from September 8, 1961, to March 8, 1962 (10:00 a.m. standard time at the address of the named insured). This renewal policy bore as its date of issue, September 8, 1961. As on the original policy there was typed under the printed word "Agent" the name "Davis & Davis." The renewal was countersigned in the same

manner as the original. With one insignificant exception, the daily report covering the renewal policy was a carbon copy of such policy. A rubber stamp "Davis & Davis, 7 St. Paul Street, Baltimore 2, Maryland" was placed over the typed name "St. Paul Agency, Inc." on the line provided for countersignature by an Authorized Representative.

Mr. Cooke testified that, in Maryland, St. Paul was its agent under a written agreement and was registered as Reserve's agent with the proper authorities in the State; that the function of St. Paul was "To accept applications for policies and file SR 22 certificates" on behalf of Reserve; that "We have no record of Davis and Davis being our agents"; that he had never dealt with Davis nor had he ever authorized Davis "to accept risks or issue policies" for Reserve. He did not know whether the daily reports were written in the office of Davis or of St. Paul. He had seen numerous policies such as those introduced in evidence with the name "Davis and Davis" on them. He had no knowledge of the day to day dealings of St. Paul nor of what arrangements St. Paul made with Davis. At the time of the trial St. Paul had been out of business for approximately three years. He had no knowledge of what proportion of St. Paul's business was produced by Davis.

After the accident, Reserve instituted declaratory judgment proceedings against Duckett and the Cornblatts seeking a judicial determination as to whether or not any insurance policy issued by Reserve to Duckett was in effect on September 7, 1961, the date of the accident. Subsequently, the Unsatisfied Claim and Judgment Fund Board was made a party defendant.

Although a jury was sworn to try three issues of fact, the trial judge ruled that the evidence pertaining to such issues was uncontradicted and discharged the jury. The trial court then found the following facts:

(1) That Duckett had mailed in his premium to Davis prior to the expiration date of the original policy.

(2) That Duckett was told by a person in authority at Davis, after she had consulted the records, that he was covered.

(3) That Reserve did not notify the Department of Motor Vehicles Financial Responsibility Section prior to September 7, 1961, of an intention to cancel the SR 22 form filed under the original policy.

The trial judge then proceeded to rule as follows:

(1) That the original policy expired at 12:01 a.m. on September 7, 1961.

(2) That the requirements of Code (1957), Art. 66½, §142, regarding notice before cancellation or annulment of security do not apply to the expiration of a policy.

(3) That coverage under the renewal policy commenced at 10:00 a.m. on September 8, 1961.

(4) That, construing the SR 22 form filed under the original policy "as would anyone in the Department of Motor Vehicles," the certified period of coverage included the entire day of September 7, 1961.

(5) That although in a normal situation the policy would control as against the certificate, this being under the Financial Responsibility Act, the certificate controlled.

(6) That clearly Davis did not have "express authority" to act on behalf of Reserve; that whether Davis had implied authority to act could not be determined from the evidence presented; that the trial judge did not believe that a sufficient showing had been made of apparent authority for Davis to act on behalf of Reserve.

We will discuss the legal conclusions of the trial judge seriatim.

(1) We agree that the original policy expired at 12:01 a.m. on September 7, 1961. It is true that usually the law does not take cognizance of parts of a day. However, there is a well recognized exception to this rule, viz., that where a contract sets forth a specific hour of termination such provision will control rather than the general rule. "Where an automobile liability policy expressly provided that it should end at a stipulated time, termination at such time was automatic without further action by the insurer." *Appleman, Insurance Law and Practice,* Vol. 7, Sec. 4268. The printed provision of the policy "12:01 A.M. standard time * * *" appearing directly under the specified policy period "from March 7, 1961 to September 7, 1961" clearly specified the hour and minute of those days at which coverage commenced and ended.

(2) Before both the trial court and this Court defendants contended that the provisions of Code (1957), Art. 66½, Sec.

142, were applicable to the original policy. That section reads as follows: "When any form of proof of financial responsibility has been certified to the Department * * *, such proof shall not be cancelled or annulled by any party in interest except upon not less than thirty (30) days' notice to the Department * * *." Defendants further contended that, as the notice required by such section had not been given by Reserve, it continued to be liable under such policy and the certificate issued thereunder. We agree with the trial judge that this section does not apply. The specified notice is required only in the event of either a cancellation or an annulment of a policy issued under the Financial Responsibility Act. The accepted meaning of "cancellation" as applied to insurance policies is termination pursuant to the provisions of a cancellation clause in the policy; the abrogation of so much of a contract as remains unperformed. *Rothman v. National Mutual Insurance Company*, 197 Md. 173, 179. Williston, Contracts §1878; *Otterbein v. Babor & Comeau Co.* (N. Y.), 5 N. E. 2d 71, 72-73. See also *Tyler v. Capitol Indemnity Ins. Co.*, 206 Md. 129, 137. "Annul" is "clearly understood to mean 'revoke' or 'abolish.'" *Matthews v. Kernewood, Inc.*, 184 Md. 297, 306.

Here we are concerned with merely the expiration of the period of coverage. Neither cancellation nor annulment was involved and the notice provided for in §142 was not required.[1]

(3) The trial judge concluded that coverage under the renewal policy commenced at 10:00 a.m. on September 8, 1961.

---

1. It should be noted that subsequent to the effective date of the SR 22 form involved in this case, there was an administrative interpretation by the Department of Motor Vehicles of the State of Maryland of Code (1957), Art. 66½, §142, in which it was stated that such section applied to the expiration of policies of insurance, as well as to the cancellation or annulment of such policies. The Court understands that this ruling has been concurred in by all companies writing automobile insurance qualified to do business in the State of Maryland and that the SR 22 form has been revised so as to continue a certification in effect until the notice required by §142 has been furnished to the Department. See form letter dated December 13, 1961, from the Commissioner of Motor Vehicles to all insurance companies writing automobile insurance and the opinion of Judge Cullen in Kaplan v. Stuyvesant Insurance Co. (*Daily Record*, March 16, 1965).

Whether, considering all of the evidence in the case, this conclusion was correct will be discussed under (6) along with the question of the agency, vel non, of Davis.

(4) and (5) We do not agree with the trial judge's conclusion that the certified period of coverage (under the SR 22 form filed under the original policy) included the entire day of September 7, 1961. The trial judge stated that he was construing that form "as would anyone in the Department of Motor Vehicles." It is to be noted that, at the hearing on the motion for a new trial, Reserve filed, as an exhibit, a certified copy of the records of that Department concerning Duckett. This contained an entry under date of September 7, 1961, that the SR 22 form filed for Duckett by Reserve had expired and that his license was suspended. Having made this notation on September 7, it is obvious that the Department construed such SR 22 form as having expired on September 6.

"It is clear that a policy provision contrary to the Act is void." *National Indemnity v. Simmons,* 230 Md. 234, 238; Code (1957), Art. 66½, §131(a) (6) (E); *Citizens Co. v. Allied Co.,* 217 Md. 494, 503; *Casualty Co. v. Hinds,* 180 Md. 676, 679-80.

However, it is equally clear that unless there is a conflict between the policy and the requirements of the statute the provisions of the policy will control. In *Casualty Co. v. Hinds, supra,* at page 681-82, we stated:

> "Of course, an insurer cannot be held liable beyond the limits of coverage specified in the policy, provided that the limitations do not conflict with the statute. For illustration, if an insurance company writes a policy for bodily injury coverage alone, obviously the company would not be liable for damage to real or personal property, for such a limitation would not be repugnant to the statute, as some other company might write a policy covering property damage. *Appleman, Automobile Liability Insurance* 1938 Ed., page 219."

The Financial Responsibility Act does not require that a policy issued thereunder cover any particular period of time. The only reference in such Act to the term of a policy is found

in §131 (a) (6) (A) which provides, among other things, that the policy shall specify "the date the insurance begins and ends." We hold, therefore, that the period of coverage specified in the policy controls, that being the contract between the parties, as against the SR 22 form.

(6) Duckett contends that Davis was at least the putative agent of Reserve; that the initial payment on account of his renewal policy (the amount of which was in accordance with past practices) was in the hands of Davis before September 7, 1961; and that, therefore, the renewal policy should have been issued effective 12:01 a.m. on that day.

We concur with the trial judge's conclusion that Davis did not have "express authority to act on behalf of Reserve." Cooke testified that there was no "direct relationship" between Reserve and Davis and that he never authorized Davis to accept risks or to issue policies for Reserve. This testimony also negates any implied authority in Davis to act on behalf of Reserve for the reason that one cannot have implied authority unless there is an actual agency. 3 Am. Jur. 2d *Agency* pp. 428-30.

Did Davis have apparent authority or was an agency created by estoppel? Although the cases and texts refer both to "apparent authority" and to "agency by estoppel" there seems to be no clear line of demarcation. Each results from certain acts or manifestations by the alleged principal made to third parties. It must be reasonable for the third person dealing with the alleged agent to believe that the agent has authority to act. The third person must in fact believe that the alleged agent has such authority, *i.e.,* he must rely upon such acts or manifestations. Restatement (Second), Agency § 8 Apparent Authority, § 8 B Estoppel, and comments to such sections; *Ramsburg v. Sykes,* 221 Md. 438, 442-43; *White v. Friel,* 210 Md. 274, 284; *Hobdey v. Wilkinson,* 201 Md. 517, 526; *Penowa Coal Sales Co. v. Gibbs & Co.,* 199 Md. 114, 119; *Hankins v. Pub. Ser. Mutual Ins. Co.,* 192 Md. 68, 79; *American Casualty Co. v. Ricas,* 179 Md. 627, 632; *Trust Co. v. Subscribers, Etc.,* 150 Md. 470, 475-76; *Deane v. Distilling Co.,* 138 Md. 388, 394-95; 3 Am. Jur. 2d *Agency* pp. 428-30.

The doctrine is stated succinctly in *Hobdey v. Wilkinson, supra,* as follows: "One who knowingly permits another to act

for him as though authorized, inducing third persons to rely to their disadvantage on the seeming authority, is estopped from later asserting the lack of authority of his apparent agent."

As a general rule where one employs another to procure insurance such person is the agent of the insured. This applies to cases where the insurance is effected through a broker and even though the broker solicited the insured. *Am. Fire Ins. Co. v. Brooks,* 83 Md. 22, 31-32; *American Casualty Co. v. Ricas, supra* at 632. However, the doctrine of either apparent authority or estoppel can be applied, in an appropriate case, even where authority to bind an insurance company is involved. *Taylor v. United States Casualty Co.* (S. C.), 92 S. E. 2d 647, 652. That this is true in Maryland is either held or indicated in *Hankins v. Pub. Ser. Mutual Ins. Co., supra; American Casualty Co. v. Ricas, supra;* and *Trust Co. v. Subscribers, Etc., supra.*

Were there acts or manifestations by Reserve which would have reasonably led Ducket to believe that Davis had authority either to issue policies on behalf of Reserve or to bind Reserve to the issuance of a policy? Was Duckett aware of such acts or manifestations and did he rely upon them? In the language of *Hobdey v. Wilkinson, supra,* did Reserve knowingly permit Davis to act for Reserve as though authorized, inducing Duckett to rely on the seeming authority of Davis, to his disadvantage?

The testimony of Cooke, as related to these questions, is inconclusive. However, he had seen "numerous policies, such as have been introduced here, with the name 'Davis & Davis' on them." This observation must have been made from the "daily reports"—carbon copies of the face sheets of the policies on which the name "Davis & Davis" appeared in type under the printed word "Agent" and by rubber stamp over the name of the "Authorized Representative—St. Paul Agency, Inc." The policy and "daily report" were "part of a snap-out set." Cooke did not know whether they were written in the office of Davis or St. Paul. The aggregate of these facts could constitute proof that Reserve knowingly permitted Davis to act for it as though authorized.

Next, the trial was held on September 8, 1964. According to

Cooke, St. Paul was no longer engaged in business and had been out of business for approximately three years. The record does not disclose either the exact date on which St. Paul ceased operations, or what its relations with Reserve were immediately prior thereto, or who was authorized to act for Reserve thereafter. Conceivably, St. Paul may not have been Reserve's agent on the dates in question and Davis may have been writing policies directly for Reserve. No one testified on behalf of either Davis or St. Paul. Such testimony should shed considerable light on these questions and also on the question of the exact date of receipt by Davis of the money order from Duckett and whether Duckett had been insured by Reserve prior to March 7, 1961.

Finally, assuming that either Reserve's acts or manifestations conferred apparent authority upon Davis or that Reserve, because of its actions, is estopped from denying any authority of Davis, did Duckett rely thereon to his disadvantage? Davis was the only concern with which Duckett had dealings. Each time a new policy was issued it was mailed to him by Davis along with a receipt. He always made his premium payments to Davis. It is our opinion that the evidence on the questions just discussed is uncertain and inconclusive, and that additional testimony should be taken by the trial court. Accordingly, the case is remanded for further proceedings under Maryland Rule 871 a in accordance with this opinion.

> *Case remanded without affirmance or reversal for further proceedings appropriate under the aforegoing opinion, costs to abide the result.*