WAILES AND EDWARDS, INC. *v.* BOCK ET AL.

[No. 294, September Term, 1971.]

*Decided April 6, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN and SMITH, JJ.

*Joe M. Kyle,* with whom were *Heise, Kyle & Jorgensen* on the brief, for appellant.

*Joseph A. Lynott, Jr.,* for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

The parties here renew their argument as to the effectiveness of a release of the right to file a mechanic's lien. Wailes and Edwards, Inc. (the Supplier) for the price of $5,631.00 sold kitchen cabinets and appliances to Cuzzins Custom Builders, Inc. (Cuzzins), the owner-builder of a residence which Dr. and Mrs. Robert Bock contemplated buying. The Supplier was paid but a small part of the purchase price. Just before settlement between Cuzzins and the Bocks on December 20, 1968, Cuzzins' secretary-treasurer, James Constantino, obtained a release of lien from the Supplier signed on its behalf

by one of its employees, James O. Helsel. Helsel told Constantino he was authorized to sign and the settlement proceeded with the release being taken at face value. In February 1969 the Supplier, taking the position that the release was not binding on it because Helsel had no authority to sign it, filed a mechanic's lien against the Bock home on an unpaid balance of $3,830.22 due from Cuzzins. When the action to foreclose the lien came on for trial, Judge Pugh decided that Helsel had apparent authority to bind the Supplier and therefore the release was valid, and found for the Bocks.

We agree with the conclusion of Judge Pugh; in our view the actions of the Supplier, before and after the signing of the release, showed a totality of conduct that prevented it from taking the position that the release does not bind it. The evidence before Judge Pugh permitted these findings:

Helsel, authorized so to do by the Supplier, had negotiated the deal for Cuzzins' purchase of the Supplier's cabinets and appliances. Helsel was authorized by the Supplier to sign on its behalf the written contract for the cabinets and the appliances. Helsel, as the Supplier's authorized agent, dealt with the builder both before and after the contract was signed. Helsel came on the job repeatedly to keep up with the performance of the installation by Cuzzins and to see that Mrs. Bock was kept happy. Mrs. Bock dealt almost exclusively with Helsel and to her he was the Supplier, and this was true also of Constantino. Helsel had signed a release of lien to Cuzzins for the Supplier prior to the release in question (the Supplier denied it authorized this or even knew of it). The president of the Supplier was asked whether he knew that in deposition Helsel had testified that earlier he had signed three or four other releases to other customers of the Supplier. He said he did know Helsel had said this but did not testify that this had not happened or that Helsel had not been authorized to sign or that the Supplier did not know this had occurred.

About the time of the settlement on December 20, Mrs. Bock told the president of the Supplier—the only time she saw him on the job—that she wanted changes in the by then installed cabinets and when he demurred, she told him he would not act that way if she had not paid in full for the cabinets, and he made no reply. The testimony of the title and settlement attorney, who was paid for his services by the Bocks, was stipulated. He would not have completed the settlement and disbursed the funds without a release of liens and he did not record the deed and disburse the purchase price until January 16, 1969. The Supplier employed counsel and learned of the release of lien the first week in January 1969. It had to be aware, or at least its counsel did, of the custom in Montgomery County not to finalize a settlement by disbursing the purchase money for ten days or two weeks or longer after the figures are agreed on and the deed and money are delivered in escrow. For a period of at least ten days from the time it learned of the execution of the release and the intended reliance on it by the Bocks and Cuzzins, the Supplier, itself or by its attorney, could have notified the Bocks or the title lawyer, or both, that it claimed the release to be unauthorized by it, and invalid. Had it done so, Cuzzins would not have been paid and neither the Supplier nor the Bocks would have sustained a loss.

We think the combination of the various actions of Helsel which the Supplier authorized and which Cuzzins and the Bocks knew of was such as to permit them reasonably to infer that Helsel was authorized to sign a release of lien. See Restatement, *Agency 2d* § 27, and *Salvatorian Mission v. Horn,* 210 Md. 475, 481, where Judge Henderson for the Court said:

> "On the question of apparent authority, it was said in *Lister v. Allen,* 31 Md. 543, quoting *Story, Agency,* sec. 443, that 'the responsibility of the principal to third persons is not confined to cases where the contract has been actually

made under his express or implied authority. It extends further and binds the principal in all cases where the agent is acting within the scope of his usual employment, or is held out to the public, or to the other party, as having competent authority, although, in fact, he has, in the particular instance, exceeded or violated his instructions, and acted without authority. For in all such cases, where one of two innocent persons is to suffer, he ought to suffer who misled the other into the contract, by holding out the agent as competent to act, and as enjoying his confidence.' "

As the last sentence indicates, a permissible finding of apparent authority often is based on elements of estoppel:

"Like apparent authority [estoppel] is based on the idea that one should be bound by what he manifests irrespective of fault; but it operates only to compensate for loss to those relying upon the words and not to create rights in the speaker. It follows, therefore, that one basing his claim upon the rules of estoppel must show not merely reliance, which is required when the claim is based upon apparent authority, but also such a change of position that it would be unjust for the speaker to deny the truth of his words." Restatement, *Agency 2d* § 8, p. 33.

See also *Reserve Insurance Co. v. Duckett*, 240 Md. 591, and *F.W. Berens, Inc. v. Fidelity Mutual*, 257 Md. 168, 178-180. In *Garfinkel v. Schwartzman*, 253 Md. 710, 721-722, the Court quoted with approval Restatement, *Agency 2d* § 8B ("Estoppel—Change of Position") Comment c ("Estoppel by Silence") :

"In many situations one may be deprived of a right of action, be subject to an action, or even lose his property by failing to reveal the

truth if he knows that another is acting or will act under a misapprehension. * * * There may even be liability based on a failure to speak, as where one knows that another is purporting or has purported to contract as his agent or to receive money on a forged instrument, and fails to reveal the facts. * * * In some situations in which silence is maintained, authority * * *, or ratification * * * results, and, if so, liability can be based upon ordinary agency principles. In situations in which neither authority nor ratification can be found, there may be liability based upon estoppel if the other party has changed his position."

See also *Bean v. Steuart Petroleum,* 244 Md. 459, 466-469; *Goldman v. Brinton,* 90 Md. 259; *Crane Co. v. Onley,* 194 Md. 43.

Judge Pugh properly could have found that the Supplier knew that the Bocks' lawyer would pay over their money to Constantino on the strength of the release unless it told the Bocks or the lawyer, or both, of its claim that the release was invalid, and that because it remained silent in this situation the position of the Bocks changed to their detriment in reliance on the release. This being so, the Supplier will not now be heard to say the release is invalid.

*Decree affirmed, costs to be paid by appellant.*