## PARKER *v.* JUNIOR PRESS PRINTING SERVICE, INC.

[No. 41, September Term, 1972.]

*Decided November 13, 1972.*

The cause was argued before MURPHY, C. J., and MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Robert C. Prem* for appellant.

*John F. Fader, II,* for appellee.

LEVINE, J., delivered the opinion of the Court.

This is an appeal from a judgment entered in the Circuit Court for Baltimore County (Maguire, J.) in the sum of $1,942.19 plus interest and costs for a printing bill rendered by appellee to appellant, an unsuccessful candidate for Congress in 1970.

Louis F. Marzullo, Jr. (Marzullo), owner of, and the sole witness for, the appellee, testified that early in September, 1970, Donald N. Embinder (Embinder) came to his place of business, stated "he was representing Mr. Parker," and ordered the printing of certain campaign literature on behalf of appellant's candidacy. In the course of conversation, it was also revealed by Embinder that he was campaign manager for appellant. Additional orders of a similar nature appear to have been placed by Embinder on three succeeding occasions. Appellant personally called at appellee's establishment on two occasions to inspect proofs in connection with separate or-

ders, and was also present at his campaign headquarters on two occasions when appellee picked up an order and made a delivery, respectively. Marzullo testified that he rendered his bill to "Republican party—Parker for Congress" pursuant to Embinder's instruction.

Embinder, who was the only witness called to testify for appellant, acknowledged that he had placed the orders for which payment was sought, and that he did so in his capacity as "Campaign Manager of Parker for Congress," his appointment, as such, having been made by appellant. Indeed, the testimony, as this summary undoubtedly suggests, was sparse and virtually free of dispute in its material aspects.

Sitting as the trier of fact, Judge Maguire found "that Donald N. Embinder was not only the Campaign Manager for Peter Parker for Congress, but also acted as his agent." He found, moreover, that Embinder had authority from appellant to engage appellee for the printing work; that Parker was a disclosed principal; and that "the campaign was for Peter P. Parker only as a candidate for Congress and not the Republican Party as a legal entity." [1]

Two contentions are advanced on appeal: (1) that under Maryland Code (1957, 1971 Repl. Vol.) Art. 33 § 26-1 *et seq.* (Fair Election Practices), appellant is not personally liable for printing expenses as appellee must "look to the appellant's treasurer" for payment; and (2) the evidence before the trial court was insufficient to support its finding that "appellant authorized Donald N. Embinder to contract liability for the appellant personally."

## (1)

In contending that he is insulated from individual lia-

---

1. Although appellee sued Embinder and appellant, the docket entries and the trial judge's decision are silent on any disposition of the claim against Embinder. We regard the decision as tacitly finding in favor of Embinder on the basis that, as agent for a disclosed principal, he could not be personally liable. *A. S. Abell Co. v. Skeen*, 265 Md. 53, 56, 288 A. 2d 596 (1972).

bility by the Election Code, appellant relies upon three sections included in the "Fair Election Practices" subtitle: Art. 33 §§ 26-5 (b), 26-6 and 26-8 (b). In relevant part, they provide:

"§ 26-5 (b). Each candidate . . . shall designate a campaign depository or depositories and all funds and contributions in furtherance of a candidacy . . . shall after receipt thereof be deposited by the treasurer . . . in the designated campaign depository . . . . No candidate, campaign treasurer . . . shall pay any expense on behalf of a candidate . . . except by check from such designated depository.

"§ 26-6. Contributions and Expenditures Must Pass Through Treasurer.

All contributions . . . received or disbursed by any candidate . . . shall be paid over to and made to pass through the hands of the treasurer and shall be disbursed by him; and it shall be unlawful and a violation of this article for any candidate . . . to make any expenditure . . . for any purposes until the money . . . so disbursed or expended shall have passed through the hands of the treasurer.

"§ 26-8 (b). Expenses.—

Any person who is a candidate for nomination for public office or a candidate for public or party office may pay his own personal expenses for filing fees, telegrams, telephoning, travel and board. The payment of such personal expenses shall not be subject to the limitation provided in subsection (c) of this section."

From these statutory provisions, appellant fashions the argument that the Election Code was designed to extend beyond the regulation of campaign practices and sought to concentrate liability for campaign expenses in the treasurer, an argument which, if successful, is hardly calculated to foster the recruitment of future campaign

treasurers. With admirable consistency, appellant urges that "[h]ad appellant himself ordered the printing, he would have been acting as an agent of the treasurer." Thus, he argues that the Election Code proscribes personal liability for printing expenses even if the candidate incurs the debt himself. This argument is predicated upon what he sees as the public policy of this State expressed in § 26-8 (b). In so contending, he quotes the first sentence of Subsection (b), but overlooks the second sentence, both of which have been quoted above. Furthermore, the complete subsection must be read together with relevant portions of the remaining subsections of 26-8,[2] if we are to observe the fundamental rule that all parts and sections of a statute must be read and considered together in arriving at the true intention of the Legislature since they form part of a general system or scheme, *Height v. State*, 225 Md. 251, 257, 170 A. 2d 212 (1961); *Thomas v. Police Commissioner of Baltimore City*, 211 Md. 357, 361, 127 A. 2d 625 (1956); *State v. Petrushansky*, 183 Md. 67, 71, 36 A. 2d 533 (1944).

When Subsection (b) is read in its entirety and is taken together with the remaining subsections of 26-8, the legislative intent is unmistakably clear that personal contributions by a candidate to his own campaign are

2. "§ 26-8. Contributions and Expenses of Candidate.
(a) *Contributions.* — Any person who is a candidate for . . . public office . . . may make voluntary contributions . . . to any treasurer . . . , subject to the provisions and restrictions of this article and for any of the purposes permitted by this article and for no other purposes.
(b) *Expenses.* — Any person who is a candidate for nomination for public office or a candidate for public or party office may pay his own personal expenses for filing fees, telegrams, telephoning, travel and board. The payment of such personal expenses shall not be subject to the limitation provided in Subsection (c) of this section.
(c) *Limits.*—No candidate for . . . election to a public or party office shall expend or permit to be expended, either directly or indirectly, from his or her personal funds . . . an amount in excess of the amounts set forth hereafter respectively for the office to be sought . . . :
* * *
Candidate for representation in Congress $10,000.00;
* * *"

limited to the applicable sum specified in Subsection (c) ($10,000.00 for Congressional candidates), but such personal contributions are not subject to the limitations of (c) if they are for any of the categories enumerated in (b).[3] In sum, the public policy argued for by appellant cannot be ascribed to 26-8 or any of its subsections.

Nor is there any merit to appellant's contention that it was the legislative intent, as particularly expressed in 26-5 (b) and 26-6, that, in effect, the candidate would no longer be the principal, but, if anything, would become the agent of his treasurer. There is nothing in the language of the statute which lends itself to this argument. What the legislature intended by the "Fair Election Practices Law," as it had with its precursor, "The Corrupt Practices Act," as those subtitle names suggest, was the regulation and control of campaign financing and to insure a system of centralized responsibility for campaign funds and expenditures. Pettengill, *Regulation of Campaign Finance—The Maryland Experience,* 19 Md. L. Rev. 91 (1959). The legislative intent being clearly adverse to appellant's contention, we think apposite the following statement by Judge Singley, for this Court, in *Maryland National Bank v. Comptroller,* 264 Md. 536, 287 A. 2d 291 (1972) :

> "The principles of statutory construction here involved are too familiar to require more than a brief reference. If there is no ambiguity or obscurity in the words used in the statute, there is no need to look elsewhere to ascertain the intent of the legislature, *Maryland Medical Service v. Carver,* 238 Md. 466, 477-78, 209 A. 2d 582 (1965) ; *Board of Supervisors of Elections v. Weiss,* 217 Md. 133, 136, 141 A. 2d 734 (1958). If the legislative intent is expressed in clear and unambiguous language, this will be given effect

---

3. Significantly, the record does not reveal the amount personally contributed by appellant to his own campaign or whether payment of the judgment entered below, or any part thereof, would expose him to a possible violation of 26-8 (c).

by the Court, *Schmeizl v. Schmeizl*, 186 Md. 371, 375, 46 A. 2d 619 (1946)." 264 Md. at 541.

(2)

In challenging the sufficiency of the evidence to support the finding that he authorized Embinder to contract individual liability, it is apparent that appellant overlooks Rule 886, in compliance with which we may not "set aside [on the judgment] on the evidence unless clearly erroneous[.]" Furthermore, due regard "must be given to the opportunity of the lower court to judge the credibility of the witnesses."

There was testimony before Judge Maguire to the effect that Embinder represented himself as appellee's campaign manager and as his representative; that he placed an order for printed materials which, as with the succeeding orders, a reasonable man in appellee's position would conclude had a single purpose, the election of appellant to Congress. He could also have found that of the four orders placed with appellee by Embinder, the proofs in two instances were personally approved by appellant at appellee's place of business; and that on the third and fourth occasions, appellant was present when appellee called for one order and delivered the other; and that at no time during the entire course of dealings, did appellant or anyone else in his coterie say or do anything to put appellee on notice that he could not look to appellant—the principal in the undertaking—for payment.

A reading of the trial court findings in context suggests that the court bottomed its decision that Embinder acted as appellant's agent on the doctrine of apparent authority, the principles of which have been frequently enunciated by us. Succinctly stated, apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on

his behalf by the person purporting to act for him. *F. W. Berens, Inc. v. Fidelity Mutual*, 257 Md. 168, 180, 262 A. 2d 556 (1970) ; *Reserve Ins. Co. v. Duckett*, 240 Md. 591, 600, 214 A. 2d 754 (1965) ; *Penowa Coal Sales Co. v. Gibbs & Co.*, 199 Md. 114, 119, 85 A. 2d 464 (1952). See Restatement (Second) *Agency* § 27 (1958). In the recent case of *Wailes and Edwards, Inc. v. Bock*, 265 Md. 274, 289 A. 2d 297 (1972), Chief Judge Hammond, following our prior decisions on the doctrine of apparent authority and its interaction with that of agency by estoppel, said for the Court:

> " 'On the question of apparent authority, it was said in *Lister v. Allen*, 31 Md. 543 [1869], quoting *Story, Agency,* sec. 443, that 'the responsibility of the principal to third persons is not confined to cases where the contract has been actually made under his express or implied authority. It extends further and binds the principal in all cases where the agent is acting within the scope of his usual employment, or is held out to the public, or to the other party, as having competent authority, although, in fact, he has, in the particular instance, exceeded or violated his instructions, and acted without authority. For in all such cases, where one of two innocent persons is to suffer, he ought to suffer who misled the other into the contract, by holding out the agent as competent to act, and as enjoying his confidence.'

> "As the last sentence indicates, a permissible finding of apparent authority often is based on elements of estoppel:

>> " 'Like apparent authority [estoppel] is based on the idea that one should be bound by what he manifests irrespective of fault; but it operates only to compensate for loss to those relying upon the words and not to create rights in the speaker. It follows,

therefore, that one basing his claim upon the rules of estoppel must show not merely reliance, which is required when the claim is based upon apparent authority, but also such a change of position that it would be unjust for the speaker to deny the truth of his words.' Restatement, *Agency 2d* § 8, p. 33.

"See also *Reserve Insurance Co. v. Duckett,* 240 Md. 591, [214 A. 2d 754 (1965)] and *F. W. Berens, Inc. v. Fidelity Mutual,* 257 Md. 168, 178-180, [262 A. 2d 556 (1970)]. In *Garfinkel v. Schwartzman,* 253 Md. 710, 721-722, [254 A. 2d 667 (1969),] the Court quoted with approval Restatement, *Agency 2d* § 8B ('Estoppel —Change of Position') Comment c ('Estoppel by Silence') :

" 'In many situations one may be deprived of a right of action, be subject to an action, or even lose his property by failing to reveal the truth if he knows that another is acting or will act under a misapprehension. * * * There may even be liability based on a failure to speak, as where one knows that another is purporting or has purported to contract as his agent or to receive money on a forged instrument, and fails to reveal the facts. * * * In some situations in which silence is maintained, authority * * *, or ratification * * * results, and, if so, liability can be based upon ordinary agency principles. In situations in which neither authority nor ratification can be found, there may be liability based upon estoppel if the other party has changed his position.'

"See also *Bean v. Steuart Petroleum,* 244 Md. 459, 466-469, [224 A. 2d 295 (1966),] *Goldman v. Brinton,* 90 Md. 259, [44 A. 1029

(1899),] *Crane Co. v. Onley,* 194 Md. 43, [69 A. 2d 903 (1949).]" 265 Md. at 277-79.

Whether our decision rests on apparent authority or agency by estoppel, the application of those principles to the facts we have recited—bearing in mind that appellant made little effort to contradict them—is, at the very least, sufficient to persuade us that Judge Maguire's decision was not clearly erroneous. Rule 886.

*Judgment affirmed; appellant to pay costs.*