ERVIN, Circuit Judge:
Charles C. Campbell, Patricia A. Campbell and C.C. Campbell & Co., Inc. (the “Campbells”) appeal from the decision of the United States District Court for the District of Maryland reversing an earlier judgment in favor of the Campbells entered by the United States Bankruptcy Court for *1466 the District of Maryland. Because we find that the district court committed no error, we affirm the judgment of the district court.
The Campbells were engaged in the business of water well drilling until shortly after Charles and Patricia Campbell filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in 1979. Parks-Davis Auctioneers, Inc. (“Parks-Davis”), the appellee in this case, is an auctioneer specializing in the sale of drilling and construction equipment. On November 27, 1979, the Campbells and Parks-Davis entered into what the Campbells allege was a binding contract under which Parks-Davis agreed to sell certain heavy equipment belonging to the Campbells. Parks-Davis later refused to perform under the terms of the alleged contract, and the Campbells sued Parks-Davis for breach of contract in an adversary proceeding in the bankruptcy court.
The bankruptcy court found that there was an enforceable contract between the Campbells and Parks-Davis and that Parks-Davis had breached the contract. Accordingly, the bankruptcy court entered judgment for the Campbells.
Parks-Davis appealed this judgment to the district court. In a memorandum and order of November 28, 1983, the district court reviewed the decision of the bankruptcy court under the clearly erroneous standard and affirmed the judgment for the Campbells. On April 11, 1985, the district court vacated its decision of November 28, 1983 on the ground that it had wrongly applied the clearly erroneous standard of review to the bankruptcy court’s decision, when controlling law required application of a de novo standard of review. The district court thereafter conducted de novo review of the record of the proceedings in the bankruptcy court and the bankruptcy court’s findings of fact and conclusions of law. In a memorandum opinion of September 25, 1985, the district court ruled that there was no enforceable contract between the Campbells and Parks-Davis and accordingly entered judgment in favor of Parks-Davis.
On appeal, the Campbells contend that the district court wrongly applied a de novo standard of review to the bankruptcy court’s decision. Additionally, the Camp-bells claim that the district court erred in finding that there was no enforceable contract between them and Parks-Davis. These contentions are without merit.
At the time of the district court’s initial review of the bankruptcy court’s decision in November 1983, controlling law in this circuit required the district court to apply a de novo standard of review. In the wake of the Supreme Court’s decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Fourth Circuit Council ordered the district courts in this circuit to adopt a local rule containing the following provision concerning review of bankruptcy court decisions:
In conducting review, the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject or modify in whole or in part the order or judgment of the bankruptcy judge and need give no deference to the findings of the bankruptcy judge. At the conclusion of the review, the district judge shall enter an appropriate order or judgment.
Circuit Council Order No. 3 § (e)(2)(B) (December 20, 1982). The United States District Court for the District of Maryland adopted this provision as part of its Local Emergency Rule 51-A. Rule 51-A was in effect from December 25, 1982 to June 27, 1984.
On April 14, 1983, this court rendered its decision in 1616 Reminc Limited Partnership v. Atchison & Keller Co., 704 F.2d 1313 (4th Cir.1983). In Reminc, we held that limiting a district court to a clearly erroneous standard in reviewing a breach of contract claim adjudicated in a bankruptcy court constituted an unconstitutional transfer of the exercise of the judicial power of the United States from an Article III court to a non-Article III bankruptcy court. Accordingly, we stated that “[i]n any case [in which a bankruptcy court’s decision is] reviewed by a district court after Decern *1467 ber 24, 1982, the standard of review is no longer the ‘clearly erroneous’ standard.” Id. at 1319. We remanded Reminc to the district court for reconsideration in light of the provisions of Circuit Council Order No. 3 quoted above.
From the foregoing discussion, it is apparent that the district court in this case erred in applying a clearly erroneous standard in its initial review of the bankruptcy court’s decision on November 28, 1983. Reminc had been decided over seven months before the district court conducted its initial review, and Reminc had made clear that the appropriate standard of review in cases such as this is not the clearly erroneous standard. Under the provisions of Local Emergency Rule 51-A, which was in effect at the time of the district court’s initial review, the district court was free to accept, reject or modify any aspect of the bankruptcy court’s decision and was not required to give any deference to the findings of the bankruptcy court.
Upon reconsideration of its November 28, 1983 memorandum and order in light of Reminc and Local Emergency Rule 51-A, the district court correctly concluded that it had erred in reviewing the bankruptcy court’s decision under the clearly erroneous standard. Accordingly, the district court acted properly in vacating its initial decision on April 11,1985. Indeed, by the time the district court vacated its initial decision, Congress had acted to prescribe appropriate standards for district courts to apply in reviewing bankruptcy court decisions. The Bankruptcy Amendments and Federal Judgeship Act of 1984, which became law on July 10, 1984, required that district courts apply a de novo standard in reviewing bankruptcy court decisions in cases such as this one. See 28 U.S.C.A. § 157(c)(1) (West Supp.1986).
In view of the foregoing discussion, we hold that the district court correctly concluded that it was required to apply a de novo standard in reviewing the bankruptcy court’s decision in this case. Upon conducting such de novo review, the district court reversed the judgment of the bankruptcy court, finding that there was no enforceable contract between the Camp-bells and Parks-Davis. On appeal, the Campbells contend that this conclusion was erroneous.
In determining that the Campbells were entitled to judgment against Parks-Davis, the bankruptcy court made extensive findings of fact and reached the conclusion of law that an enforceable contract existed between the Campbells and Parks-Davis. The bankruptcy court based this conclusion on a finding that the agent of Parks-Davis with whom the Campbells had dealt had apparent authority to bind Parks-Davis to the contract with the Campbells. After conducting its de novo review of the bankruptcy court’s decision, the district court adopted many of the bankruptcy court’s findings of fact but rejected certain findings on which the bankruptcy court had relied to support its finding of apparent authority. Accordingly, the district court concluded that there was no enforceable contract between the Campbells and Parks-Davis, because the Parks-Davis agent with whom the Campbells had dealt lacked apparent authority to bind Parks-Davis.
In reviewing the decision of the district court, we are mindful that we must accept its findings of fact unless they are clearly erroneous. Fed.R.Civ.P. 52(a). The clearly erroneous standard applies even though the district court’s findings were based on documentary evidence and did not involve evaluation of the credibility of witnesses. See Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).
The evidence presented to the bankruptcy court established that on November 27, 1979, Charles Campbell met with Orville Brogdon, one of Parks-Davis’s district managers. Brogdon brought with him a “Standard Form Contract,” which was to govern the terms of Parks-Davis’s agreement to sell the Campbells’ heavy equipment. The Standard Form Contract provided “[t]his agreement [is] binding upon auctioneer [Parks-Davis] once approved by authorized officer of auctioneer.” Three signature lines were provided. Charles Campbell signed as owner of the equipment, and *1468 Brogdon signed for Parks-Davis. However, no one ever signed the third signature line, which was supposed to be signed by an authorized officer of Parks-Davis with authority to approve the contract.
Parks-Davis contended below that no enforceable contract with the Campbells ever existed because James Parks, the only Parks-Davis officer authorized to approve contracts, never approved the contract in this case. Parks-Davis argued that although Brogdon had authority to sign the contract for Parks-Davis, he had no authority to approve the contract, and that absent approval by an authorized officer, Parks-Davis was not bound by the contract.
Although the Campbells argue on appeal that Brogdon had both actual and apparent authority to bind Parks-Davis to the contract, the bankruptcy and district courts addressed only the question whether Brogdon had apparent authority. As both courts recognized,
apparent authority to do an act is created as to a third person by written or spoken word or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.
Restatement (Second) of Agency § 27, at 103 (1958). Maryland law, which applies in this case, is in accord with the Restatement formulation. See, e.g., Klein v. Weiss, 284 Md. 36, 61, 395 A.2d 126, 140 (1978) (“Apparent authority results from certain acts or manifestations by the alleged principal to a third party leading the third party to believe that an agent had authority to act.”); Parker v. Junior Press Printing Service, Inc., 266 Md. 721, 726, 296 A.2d 377, 380 (1972) (adopting Restatement formulation). Under this standard, Brogdon could have had no apparent authority to bind Parks-Davis to the contract unless words or acts of Parks-Davis, which were manifested to the Campbells, reasonably led the Campbells to believe that Brogdon had such authority.
The district court rejected the bankruptcy court’s finding of fact that the Camp-bells reasonably relied upon Brogdon’s execution of the contract as being valid and binding upon Parks-Davis. Instead, the district court found as follows:
From the evidence produced before the bankruptcy judge, this Court cannot find that the Campbells could reasonably rely on Brogdon’s execution of the contract as being valid and binding on Parks-Davis. The approval line was not signed at the meeting on November 27, 1979 when the contract was executed; in fact, the approval line was never signed. The contract clearly stated that “the agreement is binding upon auctioneer once approved by authorized officer of auctioneer.” Brogdon only told the Campbells that he had the right and power to sign the contract on behalf of Parks-Davis, and Parks-Davis does not dispute this fact. However, Brogdon never represented that he had the authority to approve the contract on behalf of Parks-Davis; and in fact, Brogdon did not ever approve the contract on behalf of Parks-Davis. Thus, because the contract was never approved by an authorized officer of Parks-Davis, and neither Parks-Davis nor Brogdon ever represented that Brogdon had the authority to approve such contracts, Brogdon’s execution of the contract cannot be found to be valid and binding on Parks-Davis.
We cannot say that the district court’s findings of fact on this point were clearly erroneous. Although Brogdon had authority to sign the contract for Parks-Davis, neither Brogdon nor Parks-Davis ever indicated to the Campbells that Brogdon had authority to approve the contract, and, in fact, the approval line in the Campbells’ contract was never signed by anyone. In view of the fact that the contract stipulated that Parks-Davis would be bound upon approval of the contract by an authorized officer, which Brogdon was never represented to be, it was not clearly erroneous for the district court to find that the Camp-bells could not reasonably have relied upon Brogdon’s execution of the contract to bind *1469 Parks-Davis. Thus, the district court did not err in concluding that Brogdon lacked apparent authority to bind Parks-Davis to the contract with the Campbells.
The Campbells contend, however, that the district court erred in finding that there was no enforceable contract, because Brogdon had actual authority to bind Parks-Davis. Actual authority is created in an agent “by written or spoken words or other conduct which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the princi-, pal’s account.” Restatement (Second) of Agency § 26, at 100 (1958). Under this standard, Brogdon would have had actual authority to bind Parks-Davis to the contract with the Campbells only if words or conduct of Parks-Davis reasonably would have caused Brogdon to believe that Parks-Davis wanted him to exercise such authority.
Th¿ Campbells can point to no evidence that any words or conduct of Parks-Davis directed to Brogdon would have created such a belief on Brogdon’s part. Instead, the Campbells rely solely on evidence that Parks-Davis employees other than Brogdon, who ordinarily had no authority to approve contracts, were sometimes authorized to approve contracts. The Campbells do not allege that Brogdon knew of this practice, and they do not explain why Brogdon reasonably would have believed that Parks-Davis wanted him to exercise similar authority if he had known of the practice. Accordingly, we conclude that the Camp-bells’ argument that Brogdon had actual authority to bind Parks-Davis to the contract is without merit.
The district court correctly applied a de novo standard of review to the bankruptcy court’s decision. It did not err in concluding that Parks-Davis was entitled to judgment because there was no enforceable contract between Parks-Davis and the Campbells. The judgment of the district court is affirmed.
AFFIRMED.